AMERICAN UNITED LIFE INS. CO. et al.
v. FISCHER, Com'r of Insurance of
Iowa.

No. 11852.

Circuit Court of Appeals, Eighth Circuit.

Feb. 24, 1941.

JOHNSEN, Circuit Judge, dissenting.

———————◇————— -

Robert A. Adams, of Indianapolis, Ind. (Aaron T. Jahr, of Indianapolis, Ind., and Phineas M. Henry, of Des Moines, Iowa, on the brief), for appellant American United Life Ins. Co.

Clayton F. Jennings, of Lansing, Mich. (Phineas M. Henry, of Des Moines, Iowa, on the brief), for appellant John G. Emery, Commissioner of Insurance of State of Michigan, as permanent liquidating receiver of American Life Ins. Co. of Detroit, Mich.

John M. Scott and B. E. Godfrey, both of Fort Worth, Tex. (McGown, McGown, Godfrey & Logan, of Fort Worth, Tex., Phineas M. Henry, of Des Moines, Iowa, and H. L. Logan, Jr., of Fort Worth, Tex., on the brief), for appellant Dan E. Lydick, receiver of American Life Ins. Co. of Detroit, Mich. (in Texas).

Willis J. O'Brien and John N. Hughes, Jr., both of Des Moines, Iowa (John N. Hughes and Hughes, O'Brien & Hughes, all of Des Moines, Iowa, on the brief), for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This controversy arises out of the insolvency of the American Life Insurance Company of Detroit, Michigan (herein called the Michigan Company), which was incorporated under the laws of Michigan, and which, on April 12, 1938, when it was taken over for liquidation or reinsurance by the Commissioner of Insurance of Michigan, had on deposit with the Commissioner of Insurance of Iowa securities of a face value in excess of $3,600,000. The Commissioner of Insurance of Iowa, who was appointed as Receiver of the insolvent Michigan Company on June 17, 1938, by the District Court of Polk County, Iowa, brought this action in the court below against the Commissioner of Insurance of Michigan, as Permanent Liquidating Receiver of the Michigan Company, appointed on September 16, 1939, by the Circuit Court of Ingham County, Michigan, in insolvency proceedings commenced on April 12, 1938; and against Dan E. Lydick, Receiver of the same Company in Texas, appointed June 29, 1938, by the District Court of Tarrant County, Texas, in a creditors' suit commenced May 29, 1938; and against the American United Life Insurance Company, an Indiana corporation (herein called the Indiana Company), which had entered into an agreement with the Michigan Receiver to reinsure the business of the insolvent Michigan Company.

The purpose of the action was to secure a decree that the plaintiff, the Iowa Receiver, was entitled to administer the assets of the Michigan Company on deposit with the Commissioner of Insurance of Iowa on April 12, 1938, for the sole benefit of those policyholders of the Michigan Company who originally had been policyholders of the American Life Insurance Company of Des Moines, Iowa (herein called the Iowa Company), a domestic life insurance company of Iowa, the assets and policies of which the Michigan Company had acquired under reinsurance agreements dated August 24, 1921, December 27, 1922, and October 24, 1923; and that the Iowa Receiver was also entitled to the premium income from the policies of the Michigan Company which had originated in the Iowa Company. Summons was served upon the defendants pursuant to § 118. Tit. 28 U.S.C.A.

The defendants first appeared specially and moved to dismiss the cause for lack of jurisdiction of their persons and of the subject matter. Their motions were overruled. They filed answers, in which they denied the right of the Iowa Receiver to retain possession of, and to administer, the assets of the Michigan Company on deposit in Iowa, and they asserted the right of the Michigan Receiver to administer such assets as a part of the entire estate of the Michigan Company, under the laws of Michigan and under the orders of the Circuit Court of Ingham County, Michigan, and for the benefit of all of the policyholders of the insolvent Michigan Company. In their answers they again challenged the jurisdiction of the court. The case was tried.

. The court below ruled that it had jurisdiction, and it decreed that the Iowa Receiver had the sole and exclusive right to administer, for the benefit of the policyholders who originated in the Iowa Company, the securities of the Michigan Company on deposit in Iowa, and that the situs of those securities and of the debts which they evidenced was in Iowa. The court further decreed that on April 12, 1938, the title to these securities vested in the State of Iowa for the benefit of the holders of policies which originated in the Iowa Company; that the Iowa Receiver was entitled to all income from the securities after April 12, 1938; that the receivership of the Michigan Company in Iowa was independent, and was not ancillary to the receivership proceedings in Michigan; and that the District Court of Polk County, Iowa, had exclusive jurisdiction to administer the assets of the Michigan Company on deposit in Iowa. The court, in its decree, ordered the Michigan Receiver, the Indiana Company, and the Texas Receiver to account to the Iowa Receiver for all collections made by any of them upon the securities in the hands of the Iowa Receiver, and to deliver to him their files and records relating to such securities. The Michigan Receiver and the Indiana Company were also ordered to deliver to the Iowa Receiver their files and records (or true copies thereof) relating to the policies of the Michigan Company which had originated in the Iowa Company. The court enjoined all of the defendants from collecting the income or proceeds of the securities in the hands of the Iowa Receiver.

The essential facts are not in dispute, and are covered by a stipulation of facts.

The Michigan Company, on August 24, 1921, assumed and agreed to pay all of the obligations of the Iowa Company under its policies, and the Iowa Company conveyed to the Michigan Company all the Iowa Company's policy contracts together with cash assets and mortgages sufficient to cover the reserves upon its policies and all other liabilities. The Iowa Company at that time, in accordance with the laws of Iowa relating to domestic life insurance companies, had on deposit with the Commissioner of Insurance of Iowa approved securities representing the legal reserve upon all of its outstanding policies. The face value of these securities was $2,930,-840.71. By the reinsurance agreement, these securities were conveyed to the Michigan Company. The agreement contained the following provisions:

"The transfer hereby made is subject to the requirements of the statute of the State of Iowa, relative to the deposit with the Commissioner of Insurance of that State of securities representing the net cash value of outstanding contracts of life insurance, endowments or annuities, and it is understood that many of the securities hereby transferred are now in the custody of said Commissioner of Insurance of the State of Iowa by virtue of deposits made in pursuance of such statutes.

"It is further agreed by said American Life Insurance Company, Detroit, Michigan, that the deposits required by the laws of the State of Iowa to be made with the Commissioner of Insurance on all contracts of life insurance, endowments or annuities issued by said American Life Insurance Company, Des Moines, Iowa, and hereby reinsured, will be now and hereafter maintained at all times, both in amount and character of securities, as would have been required of said American Life Insurance Company, Des Moines, Iowa, under the laws of said State of Iowa. The amount of such deposit required shall be determined by valuation of policies to be made on January first and July first of each year."

The Iowa Company was not immediately dissolved. It had been admitted to do business in states in which the Michigan Company was not admitted, and the Iowa Company was used for the purpose of writing business in those states until 1923. By supplemental agreements dated December 27, 1922, and October 24, 1923, which differed in no substantial respects from the agreement of August 24, 1921, the Michigan Company reinsured that business. The three reinsurance agreements were approved by a Commission consisting of the Governor, the Attorney General, and the Commissioner of Insurance of the State of Iowa, pursuant to the laws of Iowa, and were also approved by the Commissioner of Insurance of the State of Michigan, in accordance with the laws of that State. The Iowa Company was then dissolved and its existence terminated. On October. 24, 1923, the date of the last reinsurance agreement, the securities of the Michigan Company on deposit with the Commissioner of Insurance of Iowa, representing or equalling the reserves on policies originating in the Iowa Company, were of the face value of $3,397,205.

In accordance with its agreements with the Iowa Company, the Michigan Company issued a certificate of assumption to each policyholder of the Iowa Company, which certificate stated that the Michigan Company had assumed his policy and would carry out its obligations "as fully as the same would or should have been performed by the American Life Insurance Company of Des Moines, Iowa." All of the policyholders of the Iowa Company accepted these certificates.

Prior to September 1, 1921, the date when the first of the reinsurance agreements became effective, each policy of the Iowa Company had been issued at Des Moines and had had printed on its face: "The full reserve on this policy is secured by a deposit of approved securities with the State of Iowa." Each such policy contained the provision: "The legal reserve on this policy shall be invested in approved securities and deposited with the State of Iowa as required by law." The policies which were issued by or in the name of the Iowa Company between the dates September 1, 1921, and October 24, 1923, were in a different form and did not contain the recital and provision above quoted.

After the execution of the reinsurance agreements, the Michigan Company maintained the deposit of securities with the Commissioner of Insurance of Iowa as required by the reinsurance agreements. The Michigan Company dealt with the deposited securities as it dealt with all other securities owned by it which were not on deposit. The securities on deposit in Iowa were not assigned to the Commissioner of Insurance of Iowa, but he had physical custody of

them. The Michigan Company collected the income and the proceeds of such securities without rendering any account to the Commissioner of Insurance of Iowa therefor. The Michigan Company withdrew securities at will and substituted other securities in lieu thereof, and by April 12, 1938, when the Michigan Company was taken over by the Commissioner of Insurance of Michigan, only $30,000 in face value of the $3,-600,250.59 of securities then on deposit in Iowa were securities originally deposited by the Iowa Company. The Michigan Company was required by the laws of each of the states in which it was admitted (which included Iowa and Michigan) to file an annual statement showing its condition on the 31st day of December of the year preceding that in which the statement was filed. In each of these statements covering the years 1921 to 1937 inclusive, it reported that all of the securities shown by the statement (including those on deposit in Iowa) were in its possession; and none of its annual reports, with the exception of that for 1937, showed the existence of any special or other deposit. In its statement for 1937—which was filed after a joint examination of its affairs in which the Commissioner of Insurance of Iowa had participated—it noted, apparently at his request, that the securities on deposit with him were to secure policies originating in the Iowa Company.

On April 12, 1938, the Commissioner of Insurance of Michigan filed a complaint against the Michigan Company in the Circuit Court of Ingham County, Michigan, alleging the insolvency of the Company and asking for the appointment of a Receiver and that the Company be liquidated or reinsured in accordance with the laws of Michigan, because of its insolvency. On April 13, 1938, the Commissioner took over the assets and business of the Company as custodian. Issues were joined upon his complaint, and the cause was tried. On June 7, 1938, the Michigan court appointed the Commissioner of Insurance of Michigan temporary receiver. The case was appealed to the Supreme Court of Michigan, which affirmed on September 5, 1939. Gauss v. American Life Ins. Co., 290 Mich. 33, 287 N.W. 368. On September 16, 1939, the Commissioner of Insurance of Michigan was appointed, by the Michigan court, Permanent Liquidating Receiver of the Michigan Company. The insolvency proceedings in Michigan were conducted in accordance with the laws of that State, which provide a comprehensive, economical and efficient method for the winding up of the affairs of insolvent domestic life insurance companies by the Commissioner of Insurance of Michigan under the direction and control of a Michigan court. The Commissioner of Insurance of Michigan was continuously in charge of the assets and business of the Michigan Company after April 12, 1938, under the supervision of the Michigan court.

On June 29, 1938, in a creditors' suit commenced May 29, 1938, against the Michigan Company in the District Court of Tarrant County, Texas, that court appointed Dan E. Lydick Receiver of the Texas assets of the Michigan Company. He has been at all times acting in aid of the Michigan Receiver.

On June 17, 1938, the Attorney General of Iowa petitioned the District Court of Polk County, Iowa, for the appointment of a receiver for the Michigan Company, asserting its insolvency; that its license to do business in Iowa had been revoked on April 1, 1938; that the Commissioner of Insurance of Michigan had commenced insolvency proceedings in Michigan and had asked that a receiver be appointed to wind up the affairs of the Company pursuant to the laws of Michigan; and that the Circuit Court of Ingham County, Michigan, had found the Company to be insolvent and had ordered the appointment of a receiver. The Attorney General also asserted in his petition that the Company had on deposit with the Commissioner of Insurance of Iowa securities of the estimated value of $3,603,-419.25 which had been assigned to the Commissioner. The prayer of the petition was that the Commissioner of Insurance of Iowa be appointed Receiver of the Michigan Company. The Iowa court appointed the Commissioner of Insurance of Iowa temporary receiver on the day the petition was filed. Issues were joined on the petition, and, after a trial, the Iowa court, on October 28, 1939, decreed that the Commissioner of Insurance of Iowa be appointed statutory receiver of the Michigan Company and of all its securities on deposit with him, "said securities having been deposited by the defendant Company pursuant to the laws of the State of Iowa and certain reinsurance agreements made and entered into by and between the American Life Insurance Company of Des Moines, Iowa [the Iowa Company], and the American Life Insurance Company of Detroit, Michigan [the Michigan Company], under date of August 24, 1921, December 27, 1922, and December 3, 1923 [agreement of October 24,

1923, approved December 3, 1923]." It further decreed that on June 17, 1938, the date when the Attorney General of Iowa filed his petition for the appointment of a receiver, the securities of the Michigan Company on deposit in the State of Iowa vested in the State of Iowa "for the benefit of the policies on which such deposits were made", and that such securities and their proceeds were to be administered in accordance with the laws of Iowa.

On November 17, 1939, the Michigan Receiver, at the direction of the Michigan court, entered into an agreement with the American United Life Insurance Company (the Indiana Company) for the reinsurance of the business of the Michigan Company and the management of its assets and affairs for the benefit of all of its policyholders. This agreement did not divest the Michigan court of its jurisdiction over the assets and business of the Michigan Company; such jurisdiction was expressly reserved. The agreement required the Michigan Receiver to send to each policyholder of the Michigan Company a copy of the agreement and a copy of the order of court approving it. It further provided that any policyholder not dissenting from the provisions of the agreement within thirty days should be deemed to have accepted it, and that his rights and privileges thereafter should be governed by the agreement; while the rights of those dissenting should be determined by the Michigan court. The agreement expressly recognized the existence of a controversy with respect to the securities of the Michigan Company on deposit in Iowa and with respect to the rights therein of the policyholders of the Michigan Company whose policies originated in the Iowa Company, and provided that if it should ultimately be determined that their rights were different than the rights of other policyholders. of the Michigan Company, the agreement should be amended so as to accord to the holders of policies originating in the Iowa Company such rights. On November 17, 1939, there were 4,313 policyholders, with $6,657,364.82 of insurance in force, whose policies had originated in the Iowa Company. Of them, 1,535, with insurance in force of $2,456,039 (about 37%), lived in Iowa. The rest of them were scattered among forty-one different states and several foreign countries. Of the 4,-313 policyholders, only 81 filed dissents from the reinsurance and management agreement which had been entered into with the Indiana Company. The dissenting policyholders filed claims with the Michigan Receiver for submission to the Michigan court.

The Iowa Receiver is in actual possession of the securities deposited by the Michigan Company with the Commissioner of Insurance of Iowa, and these securities consist of notes, real estate mortgage loans, real estate contracts, notes secured by policy reserves, and other evidences of indebtedness. The files and records relating to these securities and to the policies which originated in the Iowa Company are in the possession of the Indiana Company or the Michigan Receiver. The premium income on all of the policies of the Michigan Company from April 13, 1938, to November 17, 1939, was collected and retained by the Michigan Receiver. Since November 17, 1939, pursuant to the reinsurance agreement made with the Indiana Company, that Company has collected and retained all premium income. It is to be noted that the decree of the court below does not attempt to dispose of the premium income from policies which originated in the Iowa Company.

Some of the income and proceeds from the securities held by the Iowa Receiver has been collected by the Michigan Receiver and some by the Texas Receiver. It appears that, pending the determination of the controversy over the right of the Iowa Receiver to administer the securities of the Michigan Company in Iowa for the benefit of the holders of policies originating in the Iowa Company, the Michigan Receiver has been remitting his collections thereon to the Iowa Receiver under an agreement between them, and that Lydick, the Texas Receiver, has $32,998.54 which he has collected upon such securities from debtors residing in Texas.

The action brought by the Iowa Receiver in the court below was authorized by the Iowa court "to the end that the questions involving the right, title and possession of the deposited securities and property in the possession of Charles R. Fischer, Receiver, as between the various parties, claimants thereto, may be finally adjudicated."

The Iowa Receiver is of the opinion that it would be more advantageous for the holders of policies which originated in the Iowa Company to have the securities of the Michigan Company, on deposit in Iowa, administered by him in Iowa for their benefit, rather than to participate equally with

the other policyholders of the Michigan Company in the reinsurance and management agreement with the Indiana Company made by the Michigan Receiver in the Michigan insolvency proceedings.

We have stated the facts in much detail for the purpose of showing the relations of the parties, how and why the controversy arose, and what the court below was called upon to decide.

The question which this Court must first determine is whether the trial court had jurisdiction over the subject matter of the action. The appellants invoke the familiar rule that when a court of competent jurisdiction has taken actual or constructive possession of property, that property is withdrawn from the jurisdiction of all other courts, which, although having concurrent jurisdiction, may not disturb that possession, and that the court which originally acquired jurisdiction is competent to hear and determine, to the exclusion of other courts, all questions respecting the title, collection, control, preservation, and distribution of the property. Genecov v. Wine, 8 Cir., 109 F.2d 265, 267, certiorari denied 310 U.S. 639, 60 S.Ct. 1086, 84 L.Ed. 1407, and cases cited. The appellee contends that the rule is not applicable in view of the circumstances of this case; and the trial court was of that opinion.

■ We, of course, are concerned only with the jurisdiction of the court below; but, in order to ascertain whether it had jurisdiction, we must consider what jurisdiction, if any, was acquired by the Michigan court over the assets of the Michigan Company on deposit in Iowa, in the insolvency proceedings commenced by the Commissioner of Insurance of Michigan on April 12, 1938. The Michigan court, in appointing a statutory receiver under the laws of Michigan, necessarily ruled that it had power to do so, and its determination in that regard is not subject to collateral attack either in the court below or in this court. Genecov v. Wine, 8 Cir., 109 F.2d 265, 267, and cases cited.

■■ It is certain that, from and after April 12, 1938, the Commissioner of Insurance of Michigan, by virtue of the laws of Michigan and of the orders of the Michigan court in the insolvency proceedings, was the statutory successor of the insolvent Michigan Company, and as such had title to all of its assets wherever situated. Relfe v. Rundle, 103 U.S. 222, 225,

26 L.Ed. 337; Clark v. Williard, 292 U.S. 112, 120, 54 S.Ct. 615, 78 L.Ed. 1160; O'-Neil v. Welch, 3 Cir., 245 F. 261, 268. The Michigan court, on April 12, 1938, acquired jurisdiction over all of the property and business in the actual and constructive possession of the Michigan Company, and the exclusive right to determine all controversies respecting such property and business, since no other court had then taken possession of any of the assets of the Company.

■ The Commissioner of Insurance of Iowa, on April 12, 1938, had the actual physical custody of the securities of the Michigan Company on deposit in Iowa, but he had no title to them, and neither he nor the State of Iowa had or claimed any proprietary interest in them. Whatever interest the Commissioner had was contractual and was concededly for the benefit of the holders of policies of the Michigan Company which originated in the defunct Iowa Company. The Iowa Commissioner was, with respect to the securities on deposit with him, a custodian, bailee, or pledgee, depending upon what function he was required to perform under the reinsurance agreements pursuant to which the Michigan Company established and maintained the deposit.

■ We think that on April 12, 1938, the securities belonging to the Michigan Company on deposit in Iowa were legally in the possession, actual or constructive, of the Michigan Company, and that therefore the Michigan court, through the insolvency proceedings commenced in that State, acquired jurisdiction to administer them and to determine what the rights of policyholders, creditors and all others claiming interests in them, were. Actual possession of the deposited securities by the Commissioner of Insurance of Iowa, which, on April 12, 1938, were not being held adversely to the Michigan Company, would not prevent the Michigan court from acquiring such jurisdiction. Marcell v. Engebretson, 8 Cir., 74 F.2d 93, 98; Genecov v. Wine, 8 Cir., 109 F.2d 265, 267, and cases cited. While the court below ruled that, under the laws of Iowa (§ 8663, Code of Iowa 1935), the title to the deposited securities vested on April 12, 1938, in the State of Iowa for the benefit of holders of policies originating in the Iowa Company, this ruling is contrary to that of the Iowa court, which decreed that the title to them vested in the State of Iowa on June

818

17, 1938. The Michigan court decreed that, under the statutes of that State (§ 12266, Compiled Laws of Michigan 1929), title to all the assets of the Michigan Company vested in the Commissioner of Insurance of Michigan as Receiver on April 12, 1938.

■ It is our opinion that all of the questions as to the rights of those who were parties to, or beneficiaries of, the reinsurance agreements by virtue of which the Michigan Company acquired the assets and policies of the Iowa Company and maintained the deposit of securities in Iowa, are questions which the Michigan court has exclusive jurisdiction to decide, subject, of course, to the right of appellate review. Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 90, 43 S.Ct. 480, 67 L.Ed. 871. This is not a case where some public policy of Iowa with respect to preferential treatment of local creditors or policyholders of a foreign insurance company is sought to be enforced. Compare Clark v. Williard, 292 U.S. 112, 123, 54 S.Ct. 615, 78 L.Ed. 1160. This action is directed at securing for a group of policyholders of the Michigan Company, scattered throughout some forty-two states and several foreign countries, what the Commissioner of Insurance of Iowa conceives they are entitled to under the reinsurance agreements by which they became policyholders of the Michigan Company.

■ There can be no doubt that the Michigan Receiver, as the statutory successor of the Michigan Company, is the appropriate person to administer the property and business of that insolvent company under the direction and supervision of the Michigan court, which has jurisdiction and control of the policyholders of the company, the books and records, the agency force and the premium income. There can be no practical justification for liquidating or reinsuring the business of the Michigan Company in segments or subjecting the same policyholders, and the assets in which they are beneficially interested, to the jurisdiction of two or three different courts, working at cross purposes.

In Motlow v. Southern Holding & Securities Corp., 8 Cir., 95 F.2d 721, 725, 119 A.L.R. 1331, this Court said: "Experience has demonstrated that, in order to secure an economical, efficient, and orderly liquidation and distribution of the assets of an insolvent corporation for the benefit of all creditors and stockholders, it is essential that the title, custody, and control of the assets be intrusted to a single management under the supervision of one court. Hence other courts, except when called upon by the court of primary jurisdiction for assistance, are excluded from participation. This should be particularly true as to proceedings for the liquidation of insolvent insurance companies, for the reasons adverted to by Mr. Justice Cardozo in Clark v. Williard, 292 U.S. 112, 123, 54 S.Ct. 615, 620, 78 L.Ed. 1160. See, also, Glenn on Liquidation, pages 409, 410, §§ 278, 279, 280."

In Holley v. General American Life Ins. Co., 8 Cir., 101 F.2d 172, 174, we said: "Moreover, it is the established rule that the liquidation of a domestic insurance company under the laws of the state of its domicile, where such laws furnish a comprehensive method for the winding up of its affairs by an officer of the state under the jurisdiction of a court of the state, cannot be interfered with by a federal court. Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 88, 89, 43 S.Ct. 480, 67 L.Ed. 871; O'Neil v. Welch, 3 Cir., 245 F. 261, 269; Tolfree v. New York Title & Mortgage Co., 2 Cir., 72 F.2d 702, 704; Motlow v. Southern Holding & Securities Corporation, 8 Cir., 95 F.2d 721, 725, 726 [119 A.L.R. 1331]. A federal court will take no action which will impair or will frustrate the jurisdiction of a state court with respect to such proceedings."

We have regarded the opinion of the Supreme Court in Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 88–90, 43 S.Ct. 480, 67 L.Ed. 871, as an admonition to the federal courts not to interfere with an officer of a state, who, under the laws of the state and the orders of a court of the state, is engaged in administering the property and business of an insurance company chartered by the state.

The decree of the court below, we think, constitutes an interference with the orderly administration of the property and business of the Michigan Company by the Commissioner of Insurance of Michigan under the laws of Michigan, and impairs the jurisdiction of the Michigan court in directing and supervising such administration. The effect of the decree is to deprive the Michigan court and the Michigan Receiver of control over a large segment of the property of the Michigan Company and to disable that court from determining the rights of a group of policyholders who are

subject to its jurisdiction and who have been paying their premiums to the Michigan Receiver or to the Indiana Company at his direction. Nearly all of these policyholders, by failing to dissent from the reinsurance and management agreement made with the Indiana Company, have indicated their willingness to accept it. The few who have dissented have filed claims with the Michigan court.

The plan of the Iowa Receiver is to segregate the securities on deposit in Iowa from the rest of the assets of the Michigan Company and to subject them and those policyholders who have, or who are thought to have, a beneficial interest in them superior to that of other policyholders, to an independent receivership proceeding in an Iowa court which, under any theory, can properly affect only part of the assets and none of the business of the Michigan Company. The decree of the court below was in furtherance of that plan and is hostile to the plans and purposes of the Michigan Receiver and the Michigan court for winding up the affairs of the Michigan Company.

Our conclusion is that the court below lacked jurisdiction because the Michigan court had first acquired jurisdiction of the securities on deposit in Iowa. But, even if that conclusion were not justified, we would still be of the opinion that the court below could not be called upon to decide which of the two state courts has the right to administer these assets of the Michigan Company and to determine controversies respecting them. The decrees and rulings of these two state courts relative to their respective jurisdictions are not subject to review or to collateral attack in a federal court. See and compare, Palmer v. Texas, 212 U.S. 118, 131, 29 S.Ct. 230, 53 L.Ed. 435; Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 90, 43 S.Ct. 480, 67 L.Ed. 871; Holley v. General American Life Ins. Co., 8 Cir, 101 F.2d 172, 174; Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 378, 60 S.Ct. 317, 84 L.Ed. 329; Genecov v. Wine, 8 Cir., 109 F.2d 265, 267. If, by reason of the reinsurance agreements and the laws of Iowa, the Iowa court has sole jurisdiction over the securities of the Michigan Company on deposit in Iowa, as appellee contends, it is the duty of that court to exercise it. If the Michigan court, on the other hand, has such jurisdiction, as we think it has, it must resolve the controversy over these assets.

The Iowa Receiver, under the circumstances, cannot invoke the jurisdiction of a federal court to resolve his own doubts as to the jurisdiction of the Iowa court which has appointed him and which has already ruled that it has the jurisdiction which he claims that it has. We are convinced that the rights of the parties to this action with respect to the assets of the Michigan Company on deposit in Iowa and their controversy over whether the Michigan court or the Iowa court is to administer these assets were not for determination by the court below.

The decree appealed from is reversed and the case remanded with directions to enter a decree of dismissal for want of jurisdiction.

JOHNSEN, Circuit Judge (dissenting).

I am unable to agree that primary jurisdiction over the securities deposited with the Insurance Commissioner of Iowa rested in the Michigan courts, to the exclusion of independent jurisdiction by the courts of Iowa, and so respectfully dissent.

Had the Iowa deposit been one of mere bailment, with no charge or lien on the securities, I should have no difficulty, naturally, in concurrence. To hold, however, that orderliness in the domiciliary liquidation of a foreign corporation requires that a sister state be left impotent to prescribe an unsubserviated right of confirming and enforcing a lien created under its laws, upon property located in the state, is to me a bit ominous. Under such a rule, every lien creditor of a foreign corporation, including a mortgagee of real estate, despite his superior rights in the property, must, where insolvency occurs, be regarded as a vagrant suppliant, no matter what fortification the terms of his contract, or the laws of the state under which the lien was created, may have attempted to afford him. State sovereignty, commercial practicality, and the dominant rights of lien position will, I am sure, ultimately compel a retreat from the point of absolutism which has now attritively been reached in our decisions, under the justification of orderly liquidation.

A repetition of some of the salient facts in this case will, I hope, be at least slightly demonstrative.

When the Michigan Company reinsured the risks and took over the assets of the Iowa Company in 1921, the latter had on deposit with the Insurance Commissioner

of that state securities in an amount equal to the net cash value or legal reserve of its outstanding policies. The Iowa statute imposed this requirement upon all domestic life companies and provided for reserve readjustments by annual policy valuations. It authorized the company, so long as it remained in good standing, to collect the interest and dividends upon the deposited securities and to make approved substitutions. There was a provision, however, that the securities of any defaulting or insolvent company, or one against which the attorney general had instituted receivership proceedings, should "vest in the state for the benefit of the policies on which such deposits were made", and that the Iowa courts should have jurisdiction to divide the proceeds among the policy holders or apply them to the purchase of reinsurance.

At the time of the transaction with the Michigan Company, the Iowa Company's policies had printed on their face, "The full reserve on this policy is secured by a deposit of approved securities with the State of Iowa", and a provision in the policy, "The legal reserve on this policy shall be invested in approved securities and deposited with the State of Iowa as required by law." The reinsurance agreement between the two companies provided that the transfer of assets should be "subject to the requirements of the statutes of the State of Iowa relative to the deposit with the Commissioner of Insurance of that State of securities representing the net cash value of outstanding contracts", and that "the deposits required by the laws of the State of Iowa to be made with the Commissioner of Insurance on all contracts * * * reinsured will be now and hereafter maintained at all times, both in amount and character of securities, as would have been required of said American Life Insurance Company, of Des Moines, Iowa, under the laws of said State of Iowa." The Michigan Company never attempted to rewrite the policies, but simply issued to each policy holder a certificate of assumption, providing that it would "carry out all the provisions of said policy and perform all of the obligations therein contained as fully as the same would or should have been performed by the American Life Insurance Company of Des Moines, Iowa."

The reinsurance agreement, with its provision for maintaining the deposit of securities in the same manner as was required of the Iowa Company under the statute, was approved by a commission consisting of the Governor, Commissioner of Insurance, and Attorney General of Iowa, and by the Insurance Commissioner of Michigan, in accordance with the respective laws of the two states. The Michigan Company does not appear at any time to have questioned its obligation to maintain the deposit, and it regularly made the necessary adjustments in the amounts of the policy reserves from 1921 until the institution of insolvency proceedings against it in the Michigan courts in 1938.

To me, the transaction simply substituted the Michigan Company for the Iowa Company in the performance of every obligation existing under the Iowa policies and statutes. The right of the Michigan Company to agree to such a segregation of assets seems to me to be conclusively established for the purposes of this case, by the approval of the Insurance Commissioner of Michigan, the company's acceptance of the assets subject to the condition, and its retention of the benefits of the transaction. That question therefore cannot be regarded as open here. But, whether it would have been ultra vires for the Michigan Company to have agreed to make such an original deposit, the deposit having been set up and maintained under Iowa law, its status after insolvency was and could only be a question of Iowa law.

The statutes of Iowa required a domestic company to deposit securities equal to the net cash value of its policies, for the purpose of providing a protective lien in favor of each individual policyholder. They constituted the Insurance Commissioner a trustee of the assets for this purpose, and, as a matter of administrative facilitation, provided that on insolvency the full legal title should automatically vest in the state. This status and these rights were specifically continued under the terms of the reinsurance agreement. So far as the deposit was concerned, the policies remained in practical effect domestic in character. Even, however, if the deposit had not been grounded on a statutory prescription and a valid recognition of, and agreement to continue, that status, but had been simply a voluntary deposit made by the Michigan Company for the protection of the policyholders of the Iowa Company, it would have had equal significance and effect under Iowa law. State ex rel. Gibson v. American Bonding & Casualty Co., 206 Iowa 988, 221 N.W. 585.

In this situation, the receiver of the Michigan Company clearly can have no

other right in the matter than to receive any remaining surplus from the securities, after the lien rights have been satisfied, or to claim the reserve apportionment of any policyholders to whose rights he has succeeded by surrender of the policy or by equitable subrogation. It is admitted here that the securities involved are not equal in value to the net cash value of the policies. But, whatever the value of the securities, the rights of the receiver could not in any event have priority over the lien rights for which the Insurance Commissioner was authorized to act.

To say, therefore, that the legislature of Iowa could not provide an independent, substantive method of confirming and enforcing the paramount lien rights existing under Iowa law, without subserviency to the Michigan courts, is to me a denial of the sovereignty of that state. To what extent the policy holders may actually desire to avail themselves of their distributive rights under the Iowa law, in preference to accepting reinsurance privileges in the Indiana Company—which has agreed to take over the Michigan Company's risks, but with an initial lien of seventy five per cent against the reserves—is for the policy holders themselves or their successors in rights to say in the Iowa proceedings.

The fact that the Iowa Commissioner has been constituted a receiver by the Iowa courts does not involve a basic jurisdictional clash with the Michigan courts, of which cognizance can be taken here. First, as I have pointed out, the rights of the Michigan receiver in the property are clearly subordinate to those of the lien beneficiaries, until the existing liens have been satisfied under Iowa law. Again, any clash between receiverships arises simply out of the method of lien enforcement which the State of Iowa has provided in the situation. On the fundamental question to be considered, the fact that provision has been made for enforcing the liens by a specific receivership does not present any different situation than if a simple action in foreclosure were involved.

Since the Iowa court is not attempting to administer assets as such, but merely to enforce specific local liens, just as might ordinarily be done in a simple foreclosure action, I do not believe that we are able to dispose of this situation on the ground that the federal courts will not determine questions between conflicting state court receiverships. Indeed, since the decision in Erie Railroad Co. v. Tompkins, 304 U.S.

64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, it seems rather clear to me that in cases resting on mere diversity of citizenship, the federal courts are simply substituting for the state courts and owe the duty of performing all their functions, unless some limitation exists upon their jurisdiction, as, for example, in labor injunction cases. Here, the federal court was simply asked to perform the function of an Iowa state court, in declaring the status of the parties under the Iowa law. This it clearly had jurisdiction to do and owed the duty of doing. No uncertainty could exist under the law of Iowa as to the lien rights against the deposit. The State of Iowa had a sovereign right to provide a substantive means of enforcing these lien rights, to which its laws had given birth, upon property located in its jurisdiction, irrespective of whether any Michigan receivership ever existed. In the exercise of their substituted jurisdiction, it was the duty of the federal courts in this case to declare and give effect to Iowa law in the same manner as the courts of Iowa would have been obliged to do.

I have confined myself to the fundamental question involved without attempting to give consideration to the details of the trial court's decree.