**CENTRAL LIFE ASSUR. SOC. v. BIRMINGHAM, Collector of Internal Revenue.**

No. 197.

District Court, S. D. Iowa, Central Division.

Jan. 26, 1943.

Don Evans (of Carr, Cox, Evans & Riley), of Des Moines, Iowa, for plaintiff Central Life Assur. Soc.

Ruppert Bingham, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe, Sp. Asst. to Atty. Gen., and Maurice Donegan, U. S. Dist. Atty., of Davenport, Iowa, and Wm. R. Sheridan, Asst. U. S. Dist. Atty., of Keokuk, Iowa, on the brief), for defendant.

DEWEY, District Judge.

The action is to recover documentary stamp taxes assessed against the plaintiff by the Commissioner of Internal Revenue for the years 1937 to October 6, 1941, inclusive, in the amount of $6,798.41. Plaintiff paid the taxes assessed under protest and filed a claim for refund, which was denied by the Commissioner.

The tax was assessed on the ground that securities deposited during those years with the Commissioner of Insurance for the State of Iowa, as required by the Iowa statutes, was a delivery or transfer to him of the legal title of such securities.

The pertinent Iowa statute under which the deposits were made provides, insofar as here controlling:

"8655 Deposit to cover valuation * * *. The net cash value of all policies in force in any such company being ascertained, the commissioner shall notify it of the amount, and within thirty days thereafter the officers thereof shall deposit with the commissioner the amount of the ascertained valuation in the securities specified in section 8737. * * *"

The Iowa statutes contain other provisions bearing upon the question.

Section 8664 provides that: "Companies shall have the right at any time to change the securities on deposit by substituting a like amount of the character required in the first instance. * * *"

This section also provides: "If the annual valuation of the policies in force shows them to be less than the amount of security deposited, then the company may withdraw such excess, * * *."

Section 8654 provides, among other things, that: "As soon as practicable after the filing of such statement, the commis-sioner of insurance shall ascertain the net cash value of every policy in force upon the basis of the American table of mortality and four and one-half percent interest, or actuaries' combined experience table of mortality and four percent interest, in all companies organized under the laws of this state. For the purpose of making such valuation he may employ a competent actuary, who shall be paid by the company for which the service is rendered; but the company may make such valuation and it shall be received by the commissioner upon satisfactory proof of its correctness."

Section 8655 also provides: "* * * Deposits of securities may be made in excess of the amounts required hereby."

Section 8665 provides that: "* * * Companies having on deposit with the commissioner of insurance bonds or other securities may collect the dividends or interest thereon, delivering to their authorized agents the coupons or other evidence of interest as the same become due, * * *."

And Section 8663 contains the provision, and the only provision, which transfers the company's title to the securities on deposit with the Insurance Commissioner. That section reads as follows: "8663. Securities. The securities of a defaulting or insolvent company, or a company against which proceedings are pending under sections 8661 and 8662, on deposit shall vest in the state for the benefit of the policies on which such deposits were made, and the proceeds of the same shall, by the order of the court upon final hearing, be divided among the holders thereof in the proportion of the last annual valuation of the same, or at any time be applied to the purchase of reinsurance for their benefit."

It was under the provisions of these sections that the Commissioner of Internal Revenue determined that the securities deposited with the Commissioner of Insurance of the State of Iowa required a documentary stamp and assessed the tax. The provision of the Revenue Act under which the payment of the tax was required, insofar as pertinent here, is Section 724, Revenue Act 1932, 26 U.S.C.A. Int.Rev.Acts, page 634:

"Stamp Tax on Transfer of Bonds, etc. * * *

"9. Bonds, etc., sales or transfers: On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to any of the instruments mentioned or described in subdivi-

sion 1 and of a kind the issue of which is taxable thereunder, whether made by any assignment in blank or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale (whether entitling the holder in any manner to the benefit of such instrument or not), on each $100 of face value or fraction thereof, 4 cents: * * *."

And Treasury Regulations 71 (1932 Ed.):

"Art. 34. Sales or transfers subject to tax.—The following are examples of transactions subject to the tax:

* * * * * *

"(b) The transfer of stock to or by trustees.

* * * * * *

"(d) The sale or transfer of temporary or interim certificates.

* * * * * *

"(t) The transfer of legal title to stock irrespective of whether or not the transferee receives any beneficial interest therein, except as provided in article 35(k)."

The action came on for hearing in open court at Des Moines, Iowa, on the 4th day of January, 1943, on its merits. The facts are stipulated and by reference are adopted as the findings of fact of the court.

The questions for determination turn upon the interpretation of the foregoing section of the Revenue Act and the application of the facts to the law.

It would appear that the statute (§ 724) imposes the tax on the following transactions only:

(1) Sales.
(2) Agreements to Sell.
(3) Memoranda of Sales.
(4) Deliveries or Transfers of Legal Title.

■ The Supreme Court of the United States in the case of Provost v. United States, 269 U.S. 443, 458, 46 S.Ct. 152, 155, 70 L.Ed. 352, says with reference to the statute: "It evidenced a purpose not only to tax all sales or agreements to sell which had been previously taxed, but to extend the taxing provision to all transfers of legal title to shares or certificates whether technical sales or not."

This case also holds that it is the passing of the legal title that is important and not the beneficial interest that might be transferred.

If I understand the defendant's position, it is that the deposit constituted ╲ delivery or transfer of the legal title of the securi-

ties to the Commissioner of Insurance of the State of Iowa. And that such commissioner was a trustee and that the delivery or transfer of the stock to him came within the provisions of Article 34 of Treasury Regulations 71, above cited. Reliance is placed on the case of Occidental Life Ins. Co. v. Rogan, D.C., S.D.Cal., 48 F.Supp. 231, decided Dec. 11, 1942 (1942 Prentice Hall, par. 63, 127), where the court held the stamp tax was properly assessed and collected on the ground that the transfer of the securities to the Commissioner was a transfer of the legal title.

■ With this argument and conclusion I am unable to agree as the statutes of the State of Iowa make it very clear that the deposit is not a transfer of the title of the securities, as such transfer is to occur only upon default, insolvency, or the institution of receivership proceedings against the company, and then the transfer of the legal title is not to the commissioner but to the State of Iowa. The facts establish that neither of these contingencies have happened whereby the legal title was transferred to the State of Iowa. This position is conclusively supported by the findings of the Circuit Court of Appeals of this Circuit (8th) in the case of American United Life Ins. Co. v. Fisher, 117 F.2d 811; Id., 130 F.2d 643. These cases correctly interpret the Iowa statutes as I understand them, namely, that the deposit with the commissioner of insurance did not pass the legal title to the securities.

Neither can I agree with the defendant's contention that the deposit of the securities with the commissioner was the transfer of stock to a trustee.

■ The Treasury Department cannot by regulation alter or change or subject classes of property to taxation when not within the purview of the act. United States v. 11,150 Pounds of Butter, 8 Cir., 195 F. 657.

■ In a popular sense the word "trust" covers many things besides a legal, technical trust and is loosely used. By reading the regulation in the light of the Act itself, we must consider that the word "trustee" as therein contained, is used in a technical, legal sense. In a legal sense a trustee is: "The person who takes and holds the legal title to the trust property for the benefit of another; one to whom another's property is legally committed in trust; the person holding the legal title to property, under an express or implied

agreement to apply it, and the income arising from it, to the use and for the benefit of another person, who is called the cestui que trust; * * *". 65 C.J., p. 214, § 2.

In other words, it is a person who holds legal title, and hence the reasoning as to whether or not this is a trust gets back to the same question as to whether or not there was a transfer of the legal title to the commissioner of insurance of the state of Iowa. But prior to any of the three conditions upon which title to the property passes to the state the commissioner of insurance is not in a legal sense a trustee, as he does not at that time hold legal title to the property, and there is no beneficiary. The beneficiaries do not appear until one of the three conditions above noted happens, in which event the title passes to the state. Neither can it be a conditional trusteeship, that is, a deposit with the commissioner of insurance which might ripen into a trusteeship as, under the statute, even on the happening of the above named conditions, the title does not pass to the commissioner of insurance but to the State of Iowa.

As there never has been any delivery or transfer of the legal title to the commissioner of insurance of the state of Iowa by the plaintiff of any of the securities here in controversy, a tax as against the plaintiff in this case on the ground that there was such a transfer of the legal title should not have been assessed.

I therefore find as follows:

Findings of Fact.

By virtue of the Iowa statutes and as construed and carried out in practice by the plaintiff here and the commissioner of insurance of the State of Iowa, the delivery of the securities as required by such statutes to said commissioner of insurance was a deposit only to be held by him as custodian and not in any sense intended to and did not transfer or deliver the legal title to any of the securities deposited with him under the provisions of the Iowa statutes, upon which securities a documentary tax was levied upon and assessed by the defendant.

And as a

Conclusion of Law

I find:

1st, Under the facts stipulated between the parties and the above Findings of Facts, the provisions of Section 724 of the Revenue Act of 1932, having to do with the payment of documentary stamp taxes, do not include the transactions of deposit by the plaintiff with the commissioner of insurance of the State of Iowa of the securities upon which the tax was levied in this case; and

2nd, I find for the plaintiff and that it is entitled to recover as against the defendant the amount of $6,798.41, with interest.

The attorneys for the plaintiff may prepare a record entry conforming to the foregoing findings of fact and conclusions of law. To all of which the defendant excepts.