**OCCIDENTAL LIFE INS. CO. v. ROGAN**
et al.

No. 10416.

Circuit Court of Appeals, Ninth Circuit.
April 8, 1944.

George H. Koster and Bayley Kohlmeier, both of San Francisco, Cal., for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, George H. Zeutzius, and Fred E. Youngman, Sp. Assts. to the Atty. Gen., Charles H. Carr, U. S. Atty. and Edward H. Mitchell, Asst. U. S. Atty., both of Los Angeles, Cal., for appellees.

Before WILBUR, MATHEWS, and STEPHENS, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from the judgment of the United States District Court for the Southern District of California, denying recovery of documentary stamp taxes alleged to have been erroneously and illegally assessed and collected.

Appellant is an insurance company incorporated in California. The states in which it does business include California, Idaho, Iowa, Washington and Wyoming, and as provided by the laws of those states it made deposits of securities with their

respective Insurance Commissioners or analogous officers, for the protection of its policyholders. From time to time it made various withdrawals and substitutions of securities so deposited, as permitted by the applicable state statutes. Respondent claims, and the trial court held, that every such deposit or withdrawal during the period here in question (from August 10, 1936 to May 2, 1940) was such a transfer as to require payment of a documentary stamp tax under the Revenue Act of 1926, § 800 et seq., and subds. 3 and 9 of Schedule A of Title VIII of that act, as amended by the Revenue Acts of 1928 and 1932, 26 U.S.C.A. Int.Rev.Acts, pages 290, 298. Appellant contends that the deposits and withdrawals were the mere giving and return of pledges, not involving such transfer of title as to be subject to the tax.

■ This court has held that the tax in question attaches only to transfers of legal title. Orpheum Building Company v. Anglim, 9 Cir., 127 F.2d 478. Hence the sole question now before us is whether legal title was transferred by deposits and withdrawals made under the statutes of the five states here involved. The facts are stipulated.

■ Bonds were deposited with and withdrawn from the California Insurance Commissioner pursuant to §§ 939–955 of the California Insurance Code, St.1935, p. 534, St.1937, p. 2039. Those sections provide for "deposit" of securities with the Commissioner, who is required to make a special deposit of them in the State Treasury "as security for policyholders of the insurer to whom they respectively belong." Calif. Ins. Code, § 942. Section 943 provides that the depositing insurer, so long as solvent, may collect interest or dividends on securities deposited. Section 940 provides that the Commissioner "shall accept and hold securities in trust for the policyholders"; and the court below relied on this language in concluding that a true trust was established, with transfer of title to the Commissioner as trustee. We do not agree that the words "in trust," viewed in the light of the whole statute, will bear so strict an interpretation. The statute calls for a "deposit;" and deposit has been defined as "a bailment of goods to be kept by the bailee without reward, and delivered according to the object or purpose of the original trust." 1 Bouv. Law Dict., Rawle's Third Revision, p. 847. It will be noted that this definition, although clearly

defining a bailment, uses the term "trust". Considering the ordinary connotation of the word "deposit" as used in circumstances where, as here, the specific thing deposited is to be returned on proper demand, together with the provision of § 943 for collection of interest or dividends by the depositor and the language of § 942, supra, referring to deposited securities as "belonging to" the depositor, we conclude that the term "in trust" in § 940 is used only in the general sense of a fiduciary relationship and that no true trust or transfer of title is contemplated by the code provisions for deposit of securities with the Insurance Commissioner.

■ During the period in question there were withdrawn from deposit stocks that had been previously deposited with the California Insurance Commissioner under the provisions of § 634 of the California Political Code. That section provided that "The company must deposit with the commissioner as a special deposit for the benefit of such registered policies, securities * * * and said commissioner shall give his receipt therefor, and the state shall be responsible for the custody and safe return of any securities so deposited." Appellant retained both the voting rights and the right to dividends on stocks so deposited, and no transfer of title was noted on the books of the issuing corporations. Appellee places considerable reliance on the fact that stocks deposited were accompanied by separate documents in the following terms:

"For value received, We hereby sell, assign and transfer unto E. Forrest Mitchell, as Insurance Commissioner of the State of California, to be held in trust for the account of Occidental Life Insurance Company, under the provisions of Sec. 634, Pol.C. of California (-100-) shares of the capital stock of the Fireman's Fund Insurance Company standing in our name on the books of said Fireman's Fund Insurance Company represented by certificate No. A-23881 herewith and do hereby irrevocably constitute and appoint said Insurance Commissioner attorney to transfer the said stock on the books of the within named company with full power of substitution in the premises."

However, whatever transfer is described by the foregoing instrument is plainly one in trust for the purposes of Political Code, § 634. It is the general rule that a trustee takes no greater title than the purposes of

the trust require. Section 634 is phrased wholly in terms of custody and special deposit, terms relating to bailment rather than transfer of title. Thus the "trust" is one for which no transfer of title is involved; hence, whether we proceed from the premise that there is or from the premise that there is not a trust, we reach the conclusion that no title passed, and so no trust in the strict sense existed. We hold that the stock assignment quoted above is necessarily limited by its terms to such effect as was required by Political Code, § 634, namely, the transfer of possession. If no title passed to the Commissioner, no transfer of title was involved in withdrawal of the stock certificates by appellant, and no stamp tax was properly due thereon.

■ Bonds were deposited with and withdrawn from the Insurance Department of the State of Iowa under the provisions of § 8655 of the Iowa Code of 1935. That section merely provides for "deposit" of securities, and contains no terms of trust or transfer. On the contrary, § 8663 provides that in the case of a defaulting or insolvent company, securities on deposit shall vest in the state for the benefit of the policies on which such deposits were made. This clearly excludes any suggestion of a prior transfer of title. The Circuit Court of Appeals for the Eighth Circuit had held that deposits under that section do not divest the depositing company of its title (American United Life Insurance Co. v. Fischer, 117 F.2d 811; Id., 130 F.2d 643) and we agree with its conclusion. The lower court, in reaching a different conclusion, relied on the language of § 8652 of the Iowa Code of 1935, which refers to securities held "in trust and on deposit." For the reasons stated above, we do not regard such use of the word "trust" as determinative; moreover, appellant is correct in its contention that § 8652 refers only to securities deposited in states other than Iowa, and certified to the Iowa commissioner of insurance to have been so deposited.

Bonds were deposited and withdrawn in Idaho under § 40-610 of the Idaho Code of 1932. That section provides for "deposit" of securities, which the department is to certify that it holds "in trust for the benefit of the policyholders." As we have already stated, we do not regard use of the word "trust" in such a context as controlling; in this statute it is further negatived by the provision that "the department shall permit such company to collect and receive the interest and dividends on *its* securities so deposited and transferred." (italics ours) We think that this characterization of the securities as being those of the depositing company shows that no transfer of title is involved or intended and that the "transfer" referred to in the statute is a transfer of possession only.

Deposit and withdrawal of bonds in Wyoming was pursuant to § 57-410 of the 1931 Wyoming Revised Statutes. That section, read with § 57-409, is essentially in the same terms as the Idaho statute just discussed, and our conclusion regarding it is the same.

In Washington, bonds were deposited with and withdrawn from the State Treasurer in conformity with § 7069 of the Remington Revised Statutes. That section, although in somewhat different terms from those already discussed, makes similar provision for deposit of securities. The word "trust" is not used, nor any other word indicative of transfer of title; but it is provided that the securities deposited shall be "held as security for the protection of all policy-holders." We find nothing in that provision to suggest that more than a pledge is involved. On the contrary it is provided that "No transfer of securities, so held on deposit, shall be valid unless countersigned by the state treasurer." It seems apparent that if by deposit with the treasurer title passed to him, he would necessarily be the primary party in any subsequent transfer of such securities, rather than a mere countersigner. We conclude that title to bonds deposited in Washington remained in appellant.

It follows from what we have said that in none of the transactions concerned in this action was there such transfer of title as to subject appellant to a documentary stamp tax thereon under § 800, Revenue Act of 1926, as amended. Refund of the tax collected should accordingly have been allowed.

Judgment reversed.