### UNITED FUNDS, Inc., v. NEE.
### No. 3955.

District Court, W. D. Missouri, W. D.
June 18, 1947.

Roach & Brenner, of Kansas City, Mo., for plaintiff.

Sam M. Wear, U.S. Atty, and Richard H. Musser, Asst. U.S. Atty., both of Kansas City, Mo., for defendant.

REEVES, District Judge.

This is an action for the recovery of documentary stamp taxes in the sum of $5,849.95 exacted by the defendant upon notice and levy dated November 13, 1944, and paid November 20, 1944. A demand for the return of the amount paid was made on July 3, 1945. The collector failed and refused to comply with the demand of the plaintiff and this suit followed.

The plaintiff is an investment trust and was incorporated October 8, 1940. It was provided by its Articles of Incorporation that:

"Article 8. * * *

"803. All cash and securities owned by the corporation from time to time shall be placed in trust under the terms of an agreement or agreements approved by the Board of Directors and the shareholders of the corporation with one or more banks or trust companies organized under the laws of the United States of America or under the laws of any state thereof, * * *."

Conformable to this provision of its charter, the plaintiff, on October 14, 1940, entered into an agreement with Commerce Trust Company, in part as follows:

"Article I * * * Section 1.01. Simultaneously with the execution hereof the Corporation has deposited with the Trustee $32,200.00 in cash and has delivered to the Trustee certificates representing shares of the Capital Stock of the Corporation * * *."

"Article II * * * Section 2.10. At any time, and from time to time, the Corporation may direct the Trustee to use any cash then held by the Trustee with respect to the shares of stock of the Corporation

of any class, for the purchase of any securities of the corporations and/or securities included on the approved lists with respect to such class, within the limitations herein provided. * * *."

A registrar was provided for, to facilitate transfers of certificates of stock and securities, and upon all of such it is admitted that the documentary tax provided by Section 1802(b), Title 26 U.S.C.A. Int. Rev. Code was paid. However, it is contended by the defendant (and this was the basis for the exaction of the tax), that, because of the language of said paragraph (b), Section 1802, imposing a tax on "* * * rights * * * to receive such shares", the tax was levied and collected.

The defendant insists that notwithstanding the contracts and agreements above mentioned the plaintiff enjoyed the right to receive the securities purchased upon its order by the trustee, and that the law would impose a tax upon such right in the same manner as if the transfer had actually been made. This viewpoint rests upon the opinions in Raybestos-Manhattan Corp. v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L. Ed. 44, 102 A.L.R. 111, and Founders General Corp. v. Hoey, 300 U.S. 268, 57 S.Ct. 457, 81 L.Ed. 639.

The questions for decision, therefore, are whether there was in fact a transfer of securities to the trustee in a taxable sense under the statute, and whether, if so, under its contract with the trustee or custodian the plaintiff was entitled or had the right to have the securities transferred to it and that this right was granted to the trustee.

■ 1. An examination of the Trust Agreement reveals a mere naked trust, if a trust at all, and that the named trustee held the securities of the plaintiff as a mere custodian. It performed no duty, nor did it take any action with respect to said securities save only upon the express direction and orders of the plaintiff. It assumed no liability with respect to any transaction affecting the stock or securities of the plaintiff. It was a part of the charter of the plaintiff, however, that all of the cash and securities owned by it should be placed in trust under the terms of an agreement approved by the Board of Directors. The

trustee, or custodian, had no interest in the securities and to a certain extent the trustee was in the precise situation of the Commissioner of Insurance in the case of Birmingham v. Central Life Assur. Soc., 8 Cir., 141 F.2d 116, 120. Under the state law it was required that an insurance company doing business in the state should make a deposit of certain securities to protect the value of its policies in the state. The court found, notwithstanding the strong language of the transfer to the commissioner, "that no trust is created by the deposit whereby the legal title vested in the insurance commissioner. Neither is the commissioner a 'trustee' within the obvious meaning of the regulation." The court held that the tax was improperly exacted and affirmed an order of recovery.

In like manner, in the case of Occidental Life Ins. Co. v. Rogan, 9 Cir., 141 F.2d 1011, 1012, the court "held that the tax in question attaches only to transfers of legal title." In the latter case the court said: (141 F.2d .loc. cit. 1013), "We think that this characterization of the securities as being those of the depositing company shows that no transfer of title is involved or intended and that the 'transfer' referred to in the statute is a transfer of possession only."

In the same opinion the court approved the doctrine or dictum of the Circuit Court of Appeals, Eighth Circuit, which held that "deposits under that section do not divest the depositing company of its title." American United Life Insurance Co. v. Fischer, 8 Cir., 117 F.2d 811; Id., 8 Cir., 130 F.2d 643."

After the decisions in the two Supreme Court cases above cited, the Congress amended the statute and specifically provided the following exemption:

"Section 1802 * * *

"(b) * * * The tax shall not be imposed upon deliveries or transfers of shares or certificates—

"(1) From the owner to a custodian if under a written agreement between the parties the shares or certificates are to be held or disposed of by such custodian for, and subject at all times to the instructions of, the owners; * * *."

The case apparently falls within this exemption.

■ 2. It is argued by the defendant that the plaintiff had a right to receive such securities, and, that, in conferring said right or transferring said right to its trustee it became liable for the documentary tax provided in the section. Under the charter of the plaintiff it did not have the right to a transfer of such securities. It had renounced such right and provided in its charter and its contract with the Commerce Trust Company that the securities purchased on its behalf and out of funds on deposit with its trustee should always be held by the trustee subject to the orders of the plaintiff but in no case was it to hold such securities. It would have been a violation of its charter and its contract with the custodian or trustee if in any case it had permitted the transfer of any securities to it.

Moreover, the situation presented in Raybestos-Manhattan Corp. v. United States, supra, is far different from the facts in this case. In the Raybestos-Manhattan Corp. case two separate corporations conveyed their property to a new corporation in return for the shares of the new corporation's capital stock. Instead of issuing the stock directly to the two constituent corporations, the new corporation issued its shares direct to the stockholders of the old corporation in proportion to their holdings. Obviously, it was the right of the constituent corporations to receive the shares of stock of the new corporation in exchange for the assets of said corporations. This amounted to an evasion of the law and the court upheld an imposition of the tax.

In the case of Founders General Corp. v. Hoey, supra, the subscriber for the capital stock of the company, for his own convenience, caused the shares to be issued to his nominee and his agent directly by the corporation. The court simply held that by the subscriber's action he transferred his right to receive the certificates to his agent and that such a transfer was taxable.

The facts in the case at bar are far different from the cases discussed. Moreover, after the decisions, as above stated, the statute was amended and liberalized on behalf of the taxpayer. The plaintiff is squarely within the amendment and is entitled to recover the amount exacted, with interest from the time demand was made, to wit, July 3, 1945, at six per cent. per annum. Such interest should be computed until paid by the government. It will be so ordered.