## LION BONDING & SURETY COMPANY *v.* KARATZ.

## DEPARTMENT OF TRADE & COMMERCE OF THE STATE OF NEBRASKA ET AL. *v.* HERTZ ET AL., AS RECEIVERS OF LION BONDING & SURETY COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

Nos. 574, 467. Argued March 2, 1923.—Decided April 23, 1923.

1. Insolvency of a corporation is not an equitable ground for appointing a receiver at the suit of a simple contract creditor. P. 85. *Pusey & Jones Co.* v. *Hanssen,* 261 U. S. 491.
2. In a suit by a creditor alleged to be on behalf also of others similarly situated, seeking to collect a debt from an insolvent corporation through a receivership and by having the debt declared a lien on its assets, the amount in controversy, determining the jurisdiction of the District Court, does not depend on the corpo-

ration's assets or liabilities, but is the amount of the plaintiff's
claim as shown by the bill. P. 85.

3. Where the bill discloses that the amount in controversy is less
than the jurisdictional amount, a general allegation to the con-
trary is of no avail. *Id.*

4. A suit in the District Court which is dependent on a receivership
in the District Court of another district fails with the dismissal of
the bill in that case. P. 87.

5. The provision of Jud. Code, § 56, extending the operation of a
receivership to other districts in the same judicial circuit, applies
where there is fixed property extending, as a unit, into different
States, like railroads or pipe lines; but not where the assets are
those of an insurance company, described as cash, mortgages,
securities, bills receivable, real estate, stocks and bonds. P. 87.

6. The general rule is that a receiver cannot sue in a foreign juris-
diction, and this is not overcome by an order of the court appoint-
ing him purporting to embrace in the receivership all property of
the defendant wherever situate and authorizing the receiver to
apply to other courts in aid of the order. P. 87.

7. Where a state court of competent jurisdiction has, by appropriate
proceedings, taken property into its possession through its officers,
the property is thereby withdrawn from the jurisdiction of all
other courts. P. 88.

8. Where a state court of Nebraska, under Comp. Stats. Neb. 1922,
§§ 7745–7748, first took possession of records and assets of a local
insurance company, through the State Department of Trade and
Commerce, for the purpose of conducting the business temporarily,
and later, by a supplemental decree made on a supplementary
application, ordered the Department to liquidate it, *held* that re-
ceivers appointed by a federal court in the interim were not entitled
to possession of the *res,* and that their suit in a federal court against
the company and the Department for the purpose of acquiring
possession could not be maintained, and that the legality of the
state court's action in continuing its control could not be thus
questioned or attacked collaterally. P. 89.

281 Fed. 1021; 280 Fed. 540, reversed.

CERTIORARI to two decrees of the Circuit Court of Ap-
peals, the first, affirming a decree of the District Court for
Minnesota appointing general receivers for a Nebraska
insurance company; the second, reversing a decree of the
District Court for Nebraska which dismissed a bill

brought by the receivers for the possession of the company's property.

*Mr. Halleck F. Rose,* with whom *Mr. O. S. Spillman,* Attorney General of the State of Nebraska, *Mr. John F. Stout, Mr. Arthur R. Wells, Mr. Paul L. Martin* and *Mr. Amos Thomas* were on the brief, for petitioners.

*Mr. Bruce W. Sanborn,* with whom *Mr. William G. Graves, Mr. Samuel G. Ordway* and *Mr. William R. Kueffner* were on the briefs, for respondents.

*Mr. Francis R. Stoddard, Jr.,* Superintendent of Insurance of the State of New York, and *Mr. Clarence C. Fowler,* by leave of court, filed a brief as *amici curiæ.*

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

These two cases arise out of the insolvency of the Lion Bonding and Surety Company, a Nebraska insurance corporation. They are here on writs of certiorari to the United States Circuit Court of Appeals for the Eighth Circuit. In the *Karatz* case, it affirmed a decree of the federal court for Minnesota which appointed receivers in a suit brought by an unsecured simple contract creditor. See 280 Fed. 532. In the *Hertz* case, it reversed a decree of the federal court for Nebraska, which dismissed a suit brought by those receivers for possession of the company's property, 280 Fed. 540. At the date of each decree the property of the company in Nebraska was held by the Department of Trade and Commerce of that State, with the usual powers of a receiver, under a decree of a state court. The Circuit Court of Appeals directed, in the *Hertz* case, that the lower court enjoin the Department from doing any act in relation to the property, except to hold custody thereof subject to the further order of the federal court for Minnesota. Petitioners ask that the judgments of the appellate court be reversed and that the bills in the

federal district courts be dismissed. The grounds on which jurisdiction was asserted by the federal courts makes necessary a fuller statement of the facts.

The Lion Bonding & Surety Company had for some years prior to 1921 been licensed to conduct the business of insurance in Nebraska; and was doing business and had property also in eighteen other States. A statute of Nebraska commits to its Department of Trade and Commerce the supervision of insurance companies and control thereof in case of insolvency and otherwise. (Compiled Statutes, Nebraska, 1922, §§ 7745–7748.) Nebraska Laws, 1919, c. 190, Title 5, Article III, p. 576–581. Paragraph 1 of § 4 of that act provides:

" Whenever any domestic company is insolvent  .  .  . or is found, after an examination, to be in such condition that its further transaction of business would be hazardous to its policy holders, or to its creditors, or to its stockholders, or to the public;  .  .  . the department .  .  . may apply to the district court  .  .  . in the county  .  .  . in which the principal office of such company is located, for an order directing such company to show cause why the department  .  .  . should not take possession of its property, records and effects and conduct or close its business, and for such other relief as the nature of the case and the interest of its policy holders, creditors, stockholders or the public may require."

On April 12, 1921, the Department applied to the District Court of Douglas County, Nebraska, for an order directing it to take possession of the property and to conduct the business of the company, under paragraph 2 of § 4, which provides:

" On such application, or at any time thereafter, such court or judge may, in his discretion, issue an order restraining such company from the transaction of its business, or disposition of its property, records, and effects until the further order of the court. On the return of such order to show cause, and after a full hearing, the

court shall either deny the application or direct the department . . . forthwith to take possession of the property, records and effects, and conduct the business of such company, and retain such possession . . . until on application of the department . . . or of such company, it shall, after a like hearing, appear to the court that the cause of such order directing the department . . . to take possession has been removed, and that the company can properly resume possession of its property, records and effects, and the conduct of the business."

The petition prayed also for an order restraining the company from the transaction of its business or from disposing of any of its property; and for other and further relief. The company immediately filed an answer, by which it admitted the material allegations of the petition, and joined in the prayer thereof. On the same day the state court entered a decree in accordance with the prayer; the Department entered upon the duties prescribed by the decree; it immediately took possession of all the property of the company in Nebraska; has since held possession thereof subject to the orders of the state court; and has also obtained like possession of property of the company in other States. On May 28, 1921, the Department filed, in that court, a supplemental petition, in which it prayed for an order directing it to liquidate the business under paragraph 3 of § 4, which provides:

" If, on a like application and order to show cause, and after a full hearing, the court shall order the liquidation of the business of such company, such liquidation shall be made by and under the direction of the department . . . , which may deal with the property, records, effects and business of such company in the name of the department . . . or in the name of the company, as the court may direct and it shall be vested by operation of law with title to all the property, effects, contracts and

rights of action of such company as of the date of the
order so directing it to liquidate. . . ."

The supplemental petition prayed, among other things,
that the orders theretofore made, so far as applicable, and
necessary to further the liquidation, remain in full force.
The company filed an answer by which it admitted the
material allegations contained in the supplemental peti-
tion and joined in the prayer thereof. On the same day
that court entered an order in accordance with the prayer
of the supplemental petition, all action of the Depart-
ment being made subject to the direction of the court.

On May 2, 1921, while the decree of the Nebraska
court entered April 12, 1921, was in full force and the
Department was in actual possession thereunder of the
property in that State, Karatz, a citizen of Minnesota,
purporting to sue also on behalf of others similarly situ-
ated, filed a bill in equity against the company in the
federal court for the District of Minnesota, Fourth Divi-
sion. No disclosure was made of the proceedings taken
against the company in the state court of Nebraska, nor
that under its decree the Department was in possession
of all the company property in that State, and, at least,
of some of its property elsewhere. The bill alleged that
the company had been admitted to do business in Minne-
sota; that through its operation there plaintiff had be-
come an unsecured simple contract creditor to the amount
of $2,100; that the company had ceased to do business
and was insolvent; that it had assets within that district
valued at $20,000; and that there was danger that the
property of the company would be wasted. The bill
prayed that the amount due plaintiff be ascertained and
declared a first lien upon all the assets of the company
in Minnesota; that, for the purpose of protecting the
general public, creditors and stockholders, receivers be
appointed to collect all its assets, wherever situated, and
to realize upon and distribute the same; that the com-
pany be directed to deliver possession to them of all the

property wherever situated; that the company and its officers be restrained from interfering in any way with such receivers; and for general relief. On the filing of this bill the federal court, acting *ex parte,* appointed Hertz and Levin receivers of all the property of the company wheresoever situated; and authorized them to apply to any other District Court of the United States in aid of the order so entered. The company (which was served on May 5 by process upon the Insurance Commissioner of Minnesota) moved, on May 14, 1921, to dismiss the Karatz bill for want of federal jurisdiction and for want of equity. A motion was also made to discharge the receivers and to restore the property to the company or to the Department of Trade and Commerce. Both motions were denied on May 30, 1921.

The Minnesota receivers secured the appointment of themselves as ancillary receivers by the federal courts for twelve other districts, but not for the Nebraska district. On May 11 and May 12, 1921, they filed, in purported compliance with § 56 of the Judicial Code, certified copies of the bill and of the order of appointment with the clerks of the federal district courts for Nebraska and other States in the Eighth Circuit. On May 14, 1921, the company moved the Circuit Court of Appeals under that section for an order of disapproval of the appointment of receivers, so far as it may be operative outside the District of Minnesota. This motion was denied on May 31, 1921.[1]

On September 6, 1921, the Minnesota receivers filed in the federal court for the District of Nebraska, Omaha

---

[1] There was this qualification: " That the right of said receivers to the possession of such of the property of said company as is situated in the District of Nebraska shall be subject to such right of possession thereof in the Department of Trade and Commerce of Nebraska as had accrued to it, under proceedings in the District Court of Douglas County in that state, when the right of the receivers arose under the laws of the United States."

Division, a bill in equity (called the *Hertz* suit) against
the company, the Department of Trade and Commerce
and others. It charged that there was a conflict of au-
thority between the federal court for Minnesota and
the Nebraska state court concerning the administration
of the company's property; that the Department threat-
ened to liquidate the company under the order of the
state court entered May 28, 1921; that its rights were
limited to the temporary possession and listing of the
property authorized by the order of April 12, 1921; and
that it had no longer any right to the possession or con-
trol of the property either for the administration of the
affairs of the company under direction of the state court
or otherwise. The bill prayed that defendants be re-
strained from interfering with the Minnesota receiver's
possession and control; that they be directed to sur-
render possession to plaintiffs; and for other relief. A
motion of defendants to dismiss the bill for want of juris-
diction and for want of equity was granted; and the re-
ceivers appealed to the Circuit Court of Appeals.

Meanwhile the *Karatz* case had proceeded to final
hearing. On August 11, 1921, a decree was entered ad-
judicating Karatz's claim for $2,100; making permanent
the appointment of the receivers and continuing their
powers to administer the property of the company; and
perpetually enjoining it from interfering with the re-
ceiver's control. The company appealed to the Circuit
Court of Appeals. That court then heard together ap-
peals in the two cases. On April 28, 1922, it rendered
the opinions, 280 Fed. 532, 540, by which, in the Minne-
sota case, it affirmed the order appointing receivers; [2]

_____

[2] The decree in the *Karatz* case directly under review here is that
entered by the Circuit Court of Appeals on July 7, 1922, pursuant
to its *per curiam* opinion of June 30, 1922, in which it affirmed the
final decree of the District Court entered August 11, 1921, for reasons
stated in the opinion in that cause, of April 28, 1922, affirming the
" interlocutory order appointing a receiver."

and in the Nebraska case, reversed the decree dismissing the bill. The decree in the latter was later enlarged by directing the district court to reinstate the bill, and to restrain the Department, the company and their employees: " from removing, secreting or disposing of the moneys, books, papers, records, assets, property, accounts or choses in action, of or derived from the Lion Bonding and Surety Company, and from doing any other act in relation thereto, except to hold the custody thereof subject to the further order of the United States District Court for the District of Minnesota, Fourth Division." [3]

The decrees of the Circuit Court of Appeals in both cases must be reversed.

*First.* In the Karatz case the motion to dismiss the bill should have been granted. There was want of equity; for it was brought by an unsecured simple contract creditor. *Pusey & Jones Co.* v. *Hanssen,* 261 U. S. 491. But there was also the fundamental objection that the district court was without jurisdiction as a federal court.

The only ground of jurisdiction alleged is diversity of citizenship. The facts specifically stated show that the amount in controversy was less than $3,000. Plaintiff's claim against the company was $2,100. He prayed that this debt be declared a first lien on the assets within the State. His only interest was to have that debt paid. The amount of the corporation's assets, either within or without the State, is of no legal significance in this connection. Nor is the amount of its debts to others. The case is not of that class where the amount in controversy

---

[3] In accordance with this decree of the Circuit Court of Appeals the federal District Court for Nebraska entered a decree for an injunction. From the decree of the District Court the Department appealed directly to this Court on the ground that the District Court was without jurisdiction as a federal court. The appeal was dismissed on October 16, 1922, for lack of jurisdiction in this Court. 260 U. S. 696.

is measured by the value of the property involved in the litigation. *Hunt* v. *New York Cotton Exchange,* 205 U. S. 322, 335; *Western & Atlantic R. R. Co.* v. *Railroad Commission of Georgia,* 261 U. S. 264. Nor is it like those cases in which several plaintiffs, having a common undivided interest, unite to enforce a single title or right, and in which it is enough that their interests collectively equal the 'jurisdictional amount. *Troy Bank* v. *G. A. Whitehead & Co.,* 222 U. S. 39, 41. In the case at bar, if several creditors of the company, each with a debt less than $3,000, had joined as plaintiffs, the demands could not have been aggregated in order to confer jurisdiction. *Rogers* v. *Hennepin County,* 239 U. S. 621; *Scott* v. *Frazier,* 253 U. S. 243. Nor can Karatz's allegation that he sued on behalf of others similarly situated help him. Compare *Title Guaranty Co.* v. *Allen,* 240 U. S. 136; *Eberhard* v. *Northwestern Mutual Life Ins. Co.,* 241 Fed. 353, 356.[4] Since the bill in this case discloses that the amount in controversy was less than the jurisdictional amount, the general allegation that it exceeds this amount is, therefore, of no avail. *Vance* v. *W. A. Vandercook Co. (No. 2),* 170 U. S. 468.

As the bill should have been dismissed on motion, there is no occasion to consider whether the provisions of the Nebraska statute and the proceedings taken thereunder in the courts of that State, which the defendant set up, constituted a bar to the *Karatz* suit.[5]

---

[4] Where a creditor's bill has been entertained by this Court, the amount of a single plaintiff's claim has been large enough to satisfy the jurisdictional requirement. Compare *Hatch* v. *Dana,* 101 U. S. 205; *Johnson* v. *Waters,* 111 U. S. 640; *Handley* v. *Stutz,* 137 U. S. 366.

[5] Compare *O'Neil* v. *Welch,* 245 Fed. 261, 267, 268; *Ward* v. *Foulkrod,* 264 Fed. 627, 634. See also *Relfe* v. *Rundle,* 103 U. S. 222; *Bernheimer* v. *Converse,* 206 U. S. 516; *Converse* v. *Hamilton,* 224 U. S. 243.

*Second.* In the *Hertz* case, also, the motion to dismiss the bill should have been granted. Being dependent upon the decree in the *Karatz* suit appointing the receivers, the *Hertz* suit must necessarily fall with the dismissal of that bill. But there are other insuperable obstacles to the maintenance of the *Hertz* suit.

Hertz and Levin were not appointed ancillary receivers for Nebraska. They sue in the Nebraska district as Minnesota receivers, relying upon § 56 of the Judicial Code. That section, by its terms, applies only, where in a suit " in which a receiver shall be appointed the land or other property of a fixed character, the subject of the suit, lies within different States in the same judicial circuit." It relates to those cases where the fixed property is a unit, extending into several States, like interstate railroads and pipe lines.[6] See *Public Utilities Commission* v. *Landon,* 249 U. S. 236, 243. It cannot be assumed that the assets of an insurance company are of that character. Those of this company, within the Minnesota district, specifically described in the *Karatz* bill were alleged to consist of money and credits. The description of the property in Nebraska, given in the *Hertz* bill, is " cash, mortgages and other securities, bills receivable, real estate, stocks and bonds." The provisions of § 56 extending the operation of a receivership to other districts of the same judicial circuit were, therefore, inapplicable to this case. The motion made, under that section, for disapproval of the order, so far as it may be operative outside the District of Minnesota, should have been granted. As Minnesota receivers merely, Hertz and Levin had no rights whatever in Nebraska. The general rule that a receiver cannot

---

[6] The scope and effect of this section was stated by Mr. Moon (who introduced it) to be this: " It applies to a case where a receiver is to be appointed by a district judge covering property that runs across an entire circuit." Cong. Rec., 61st Cong., 3rd sess., pp. 566, 3998.

sue in a foreign jurisdiction applied. *Great Western Mining Co.* v. *Harris,* 198 U. S. 561. The express authorization (contained in the order of appointment) to apply for aid to other courts could not aid them in this respect. *Sterrett* v. *Second National Bank,* 248 U. S. 73.

Moreover, even if the federal court for Minnesota would have had jurisdiction to appoint the receivers, and these receivers had secured ancillary appointment in the Nebraska district, the *Hertz* bill should still have been dismissed; because the property was then in the possession of the state court. What the federal court undertook to do was not to adjudicate rights *in personam* (as the state court did in *Kline* v. *Burke Construction Co.,* 260 U. S. 226), but to take the *res* out of the possession and control of the state court, and to enjoin all action on its part, except as directed by the federal court for Minnesota. It sought to do this, although the state court alone had jurisdiction of the parties and of the subject-matter, at the time when the proceeding before it was begun; at the time its decree directing the Department to take possession was entered; and at the time possession was taken thereunder. Moreover, the proceeding in the state court was confessedly an appropriate one; the possession taken was actual; and it has been continuous. All this occurred before any suit was begun in any federal court. The federal court did not seek to gain possession and control of the Nebraska property until three months after entry of the decree of the state court directing the Department (which had possession of the *res*) to proceed with the liquidation. The case is, thus, free of those features which sometimes create difficulty in determining conflicts between courts of concurren juris-diction.

Where a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn

from the jurisdiction of all other courts. *Wabash R. R. Co.* v. *Adelbert College,* 208 U. S. 38, 54. Compare *Oklahoma* v. *Texas,* 258 U. S. 574, 581. Possession of the *res* disables other courts of coördinate jurisdiction from exercising any power over it. *Farmers' Loan & Trust Co.* v. *Lake Street Elevated R. R. Co.,* 177 U. S. 51, 61. The court which first acquired jurisdiction through possession of the property is vested, while it holds possession, with the power to hear and determine all controversies relating thereto. It has the right, while continuing to exercise its prior jurisdiction, to determine for itself how far it will permit any other court to interfere with such possession and jurisdiction. *Palmer* v. *Texas,* 212 U. S. 118, 126, 129.

The assertion of control by the federal courts over property in the possession of the state court, is sought to be justified on the following ground: The possession taken by the Department under the state court's decree of April 12, 1921, was only for a temporary purpose; namely, to conduct the business until the company could properly resume the conduct thereof. True, the supplemental decree entered by the state court on May 28, 1921, directed the Department to liquidate the business as provided in the statute. But, meanwhile, on May 2, 1921, suit had been brought by Karatz in the federal court for Minnesota; and it had obtained jurisdiction over the company's assets by its appointment *ex parte* of receivers. So, the court says, 280 Fed. 542, " its right to the possession by its receivers is superior to that of the state court. It follows that the receivers appointed by it are entitled to the possession of the company's records and assets as against the Department of Trade and Commerce."

This contention is opposed to the settled principles which govern the relations of courts of concurrent jurisdiction. It is inconsistent, also, with § 265 of the Judicial Code, which prohibits courts of the United States from

staying proceedings in courts of a State. *Essanay Film Manufacturing Co.* v. *Kane,* 258 U. S. 358. The Nebraska court was confessedly a court of competent jurisdiction. While it was in possession of the *res,* it entered a supplemental decree directing the Department to liquidate the company. The statute of the State expressly provides for such liquidation. The original petition of April 12, 1921, clearly contemplated it and contained a prayer for general relief. The claim is that the application for liquidation is a new and independent proceeding; and that jurisdiction over the *res* had terminated before entry of the supplemental decree, although the courts' possession of the *res* continued. The claim is groundless. But if the legality of the state court's action was to be questioned, it could be done only by laying the proper foundation through appropriate proceedings in that court. *Covell* v. *Heyman,* 111 U. S. 176, 179; *Byers* v. *McAuley,* 149 U. S. 608, 614. Compare *Laing* v. *Rigney,* 160 U. S. 531; *Metcalf* v. *Barker,* 187 U. S. 165; *Pickens* v. *Roy,* 187 U. S. 177; *Murphy* v. *John Hofman Co.,* 211 U. S. 562, 569. If such action had been taken and relief had been denied there, resort could then have been had to appellate proceedings. *Wiswall* v. *Sampson,* 14 How. 52. But the judgment of the state court, which had possession of the *res,* could not be set aside by a collateral attack in the federal courts. *Mutual Reserve Fund Life Association* v. *Phelps,* 190 U. S. 147, 159, 160. Nor could it be ignored. *Shields* v. *Coleman,* 157 U. S. 168. Lower federal courts are not superior to state courts.

*Reversed.*