## WOERTER v. ORR et al.

### No. 2394.

Circuit Court of Appeals, Tenth Circuit.

May 2, 1942.

---

D. D. Panich, of Little Rock, Ark., and Thomas J. Downs, of Chicago, Ill., for appellant.

Ferd. P. Snider, of Muskogee, Okl., for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

H. H. Orr, Howard B. Roy, W. F. Billingsley, R. R. Platt, and Chas. G. Kemble, in behalf of themselves and 565 other persons,[1] brought this action against Charles H. Albers, Receiver of the Chicago Bank of Commerce,[2] in the District Court of Wagoner County, Oklahoma. The receiver removed the action to the District Court of the United States for the Eastern District of Oklahoma. From a judgment in favor of the plaintiffs, the receiver has appealed.

In their complaint the named plaintiffs alleged: That for many years prior to February 18, 1932, the Cherokee Public Service Company, a corporation, was the owner of gas distributing systems in the city of Wagoner and the town of Jenks, Oklahoma, and carried on the business of selling and distributing natural gas to its customers in such city and town; that on or about January 8, 1932, the Cherokee Company was adjudged a bankrupt in the District Court of the United States for the Western District of Arkansas, and W. D. Dickinson was duly appointed trustee of its assets; that he duly qualified and on February 18, 1932, took charge of all the assets of the Cherokee Company and operated the business of such company at Wagoner and Jenks continuously until November 15, 1938, when all of such assets and the good will of the business were sold and transferred to the receiver; that the receiver took possession of such assets and carried on the business of selling and distributing natural gas in such city and town until November 15, 1939, when he sold the assets to the Oklahoma Natural Gas Company; that during the ownership and operation of the business by the Cherokee Company, by Dickinson, as trustee, and by the receiver, plaintiffs from time to time became customers and consumers of natural gas sold and distributed by the Cherokee Com-

---

[1] Hereinafter referred to collectively as plaintiffs.

[2] Hereinafter referred to as the receiver.

pany, Dickinson, and the receiver; that the plaintiffs made deposits ranging from $5 to $45 with the Cherokee Company, Dickinson, as trustee, or the receiver; that such deposits were known as meter deposits; that most of such deposits were in denominations of $10; that plaintiffs are informed and believe such deposits aggregate the sum of $6,720; that the plaintiffs have liens on all of the assets so transferred by the Cherokee Company, Dickinson, as trustee, and the receiver, and on the proceeds of the sale in the hands of the receiver, for the payment of the meter deposits made by them respectively, and respectively have possession of the meters set on their premises; that the receiver has on hand and on deposit in the state of Oklahoma, sufficient funds to satisfy all of such claims and to satisfy "their liens" for their deposits; that the funds so held by the receiver are trust funds held by him for the use and benefit of the plaintiffs; and that plaintiffs are entitled to recover the same. The named plaintiffs prayed that the receiver be required to disclose the names of the 565 other persons, the amount deposited by each of the plaintiffs, and the dates of their respective deposits; that the receiver be required to account to the plaintiffs for all of said deposits and to pay over to the named plaintiffs the sum of $6,720, or such sum as might be found due such depositors, and that the named plaintiffs be permitted to distribute to themselves and said 565 other persons the amounts respectively found due each of them after paying the costs of the litigation; and that "the liens of plaintiffs" on the assets be foreclosed and the claims of plaintiffs paid from the proceeds of the sale thereof, or that funds in the hands of the receiver be used to satisfy such claims.

The right of removal and the jurisdiction of the federal court are not challenged by either the plaintiffs or the receiver. 28 U.S.C.A. § 80, provides that if in any suit commenced in any district court of the United States, or removed from a state court to a district court of the United States, it shall appear to the satisfaction of such district court that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of such district court, the district court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require, and shall make such order as to costs as shall be just.

Under this section, it is the duty of this court to notice the lack of the requisite jurisdictional amount sua sponte.[3]

The right of removal depends upon the case disclosed by the pleadings when the petition therefor is filed.[4]

It is well settled that where several plaintiffs claiming not under a single or joint right, but by separable rights and titles, assert their separate and distinct demands in a single suit, the amount involved in each separate controversy must be of the requisite amount to be within the jurisdiction of the district court, and that those amounts cannot be added together to satisfy jurisdictional requirements.[5]

Nor can the separate claims be aggregated to make up the requisite jurisdictional amount, because the named plaintiffs sue in behalf of themselves and other

3 Clark v. Paul Gray, Inc., 306 U.S. 583, 588, 59 S.Ct. 744, 83 L.Ed. 1001; St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 287, Note 10, 58 S.Ct. 586, 82 L.Ed. 845.

4 Pullman Co. v. Jenkins, 305 U.S. 534, 537, 59 S.Ct. 347, 83 L.Ed. 334; St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 291, 295, 296, 58 S.Ct. 586, 82 L.Ed. 845; Salem Trust Co. v. Manufacturers' Finance Co., 264 U.S. 182, 189, 44 S.Ct. 266, 68 L.Ed. 628, 31 A.L.R. 867; Barney v. Latham, 103 U.S. 205, 215, 216, 26 L.Ed. 514; Graves v. Corbin, 132 U.S. 571, 585, 10 S.Ct. 196, 33 L.Ed. 462; Louisville & Nashville R. R. Co. v. Wangelin, 132 U. S. 599, 601, 10 S.Ct. 203, 33 L.Ed. 473;

Colorado Life Co. v. Steele, 8 Cir., 95 F. 2d 535, 537.

5 Ex parte Baltimore & Ohio R. R. Co., 106 U.S. 5, 1 S.Ct. 35, 27 L.Ed. 78; Atwood v. National Bank of Lima, 6 Cir., 115 F.2d 861, 863; Hackner v. Guarantee Trust Co. of New York, 2 Cir., 117 F.2d 95, 97, 98; Clark v. Paul Gray, Inc., 306 U.S. 583, 589, 59 S.Ct. 744, 83 L.Ed. 1001; Clay v. Field, 138 U.S. 464, 479, 11 S.Ct. 419, 34 L.Ed. 1044; Wheless v. St. Louis et al., 180 U.S. 379, 382, 21 S.Ct. 402, 45 L.Ed. 583; Pinel v. Pinel, 240 U.S. 594, 596, 36 S.Ct. 416, 60 L.Ed. 817; Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 86, 43 S.Ct. 480, 67 L.Ed. 871.

persons similarly situated.[6] In Clay v. Field, 138 U.S. 464, 479, 11 S.Ct. 419, 425, 34 L.Ed. 1044, the court said:

"The general principle observed in all is that if several persons be joined in a suit in equity or admiralty, and have a common and undivided interest, though separable as between themselves, the amount of their joint claim or liability will be the test of jurisdiction; but where their interests are distinct, and they are joined for the sake of convenience only, and because they form a class of parties whose rights or liabilities arose out of the same transaction, or have relation to a common fund or mass of property sought to be administered, such distinct demands or liabilities cannot be aggregated together for the purpose of giving this court jurisdiction by appeal, but each must stand or fall by itself alone."

■ We conclude that the trial court should have remanded the case to the state court and have made such order respecting costs as it deemed just.

■ The parties rely upon the allegations of a second amended petition filed in the federal court after removal to support the jurisdiction. We have shown that the right of removal is to be tested by the state of the pleadings at the time the petition therefor is filed, but if the second amended petition could be considered, we think the same result would follow. In the second amended petition, the plaintiffs set up an escrow contract entered into between the receiver and the Oklahoma Natural Gas Company on February 17, 1940, pursuant to which $4,589.72 of the purchase price was deposited with the First National Bank and Trust Company of Tulsa for the protection of the Oklahoma Natural Gas Company and the meter depositors. In the escrow contract, it was agreed that the deposited sum of $4,589.72 represented meter deposits deposited by gas consumers, less deductions for gas service for which collection had not been made; that the receiver and the Oklahoma Natural Gas Company would endeavor to cause a test suit, in the nature of a class suit, for the benefit of the depositors to be filed in the district court of Wagoner County, Oklahoma, against the receiver for the purpose of adjudicating the rights of meter depositors to the $4,589.72; that in the event such suit should result in a final adjudication in favor of the receiver, such sum should be paid to the receiver upon demand by him; that in the event such suit should result in an adjudication against the receiver, such sum should be paid to the clerk of the court for distribution under the orders and authority of the court. In the second amended complaint, the plaintiffs alleged that the escrow deposit was created for the common benefit of all meter depositors; that the plaintiffs have a common interest in such fund and a lien thereon for the payment of their meter deposits, respectively, less any unpaid claims for gas. In their second amended complaint, plaintiffs prayed that the receiver be required to disclose the names of the 565 other persons and the amount and date of each deposit made by the several plaintiffs; that the receiver be required to account to the plaintiffs for all such deposits; that the named plaintiffs have judgment against the receiver for the sum of $4,589.72 for themselves and the other 565 depositors, and have a judgment foreclosing the lien and directing the escrow agent to pay such sum into the court for the payment of the expenses of the suit and distribution under the direction of the court.

Neither the Oklahoma Natural Gas Company nor the escrow agent was a party to the suit. The plaintiffs sought in the second amended complaint, as in the original complaint, to establish and enforce the separate and distinct right and cause of action of each meter depositor. The duty of the escrow agent under the contract to pay the deposit into court was conditioned upon the depositors first establishing their individual claims against the receiver. No obligation on the part of the escrow agent to pay over the fund for the benefit of plaintiffs had yet arisen under the escrow contract. The object of the suit was not to enforce the escrow contract nor to reach the escrow fund, but to comply with the required condition of the escrow contract to make the escrow fund available. In other words, no meter depositor had any right under the escrow contract until he established in a test action the receiver's liability to him. Not until then did the escrow deposit become

6 Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 86, 43 S.Ct. 480, 67 L. Ed. 871; Wheless v. St. Louis et al., 180 U.S. 379, 382, 21 S.Ct. 402, 45 L. Ed. 583.

a common fund for the benefit of the meter depositors.

The rights of the several meter depositors to the return of their meter deposits were several and distinct. They claimed not under a single or joint right, but by separable rights and titles. The suit was brought primarily to establish their separate and distinct claims. Hence, their claims could not be aggregated under the second amended complaint to make up the requisite jurisdictional amount.

The cause is reversed and remanded with instructions to vacate the judgment, remand the action to the state court, and make such order respecting costs as shall be just.