SMITH et al. v. CENTRAL TRUST CO. et al.

SMITH et al. v. CENTRAL TRUST CO.

Nos. 5112, 5164, 5184, 5189.

Circuit Court of Appeals, Fourth Circuit.

Jan. 1, 1944.

734

J. Campbell Palmer, III, of Charleston, W. Va. (Ira J. Partlow, Acting Atty. Gen. of West Virginia, Ross B. Thomas, B. J. Pettigrew, and Koontz & Koontz, all of Charleston, W. Va., Thomas J. Herbert, Atty. Gen. of Ohio, and David M. Spriggs, Asst. Atty. Gen. of Ohio, on the brief), for appellants and cross-appellees in Nos. 5112 and 5164, and appellants in Nos. 5184 and 5189.

Hillis Townsend and Thomas B. Jackson, both of Charleston, W. Va. (Townsend & Townsend and Brown, Jackson & Knight, all of Charleston, W. Va., on the brief), for appellee and cross-appellant in Nos. 5112 and 5164, and appellee in Nos. 5184 and 5189.

Homer A. Holt, of Charleston, W. Va. (James R. Fleming, of Ft. Wayne, Ind., and John V. Ray, of Charleston, W. Va., on the brief), for appellees in Nos. 5112 and 5164.

Homer Kripke, Asst. Sol., of Philadelphia, Pa. (John F. Davis, Sol., of Philadelphia, Pa., and Ezra Weiss, of Indianapolis, Ind., on the brief), for Securities and Exchange Commission.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

### Cases Nos. 5112–5164.

These appeals are taken from an order of the District Court in the reorganization of the Fidelity Assurance Corporation under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., whereby compensation was allowed for the services of the trustee, its attorneys and the attorneys for the debtor during the period between June 6, 1941 and May 22, 1943 in the aggregate sum of $123,800 as follows:

| | |
|---|---:|
| Central Trust Company, trustee, services less interim allowance of $18,000 | $ 50,000 |
| Townsend and Townsend, services as attorney for trustee, less interim allowance of $12,000 | 35,000 |
| John B. Ray, services as attorney for debtor | 21,000 |
| James R. Fleming, services as attorney to debtor | 5,000 |
| and services as attorney to trustee | 300 |
| Homer A. Holt, services as attorney to debtor in the Supreme Court of the United States | 12,500 |
| | $123,800 |

By the decision of this court in Sims v. Fidelity Assurance Association, 129 F.2d 442, affirmed by the Supreme Court in Fidelity Assurance Association v. Sims, 318 U.S. 608, 63 S.Ct. 807, the District Court

was directed to dismiss the petition for reorganization. Upon the dismissal the District Court directed the trustee to turn back the funds in its hands to the receivers appointed by the state court of West Virginia in a prior proceeding, less the sum of $10,000 to cover the expenses of closing the estate and the sum of $230,626.24 which the trustee, its attorneys and the attorneys for the debtor claimed as compensation for services rendered and expenses incurred. For the services rendered the court ordered the allowances hereinbefore set out. The state court receivers appealed on the ground that as the result of the dismissal of the reorganization petition the federal court was without power to direct the distribution of any of the funds in the trustee's hands and should have ordered the trustee to turn over the entire assets to the receivers, and that the trustee and the attorneys should be relegated to the state court for any reimbursement and compensation to which they may be entitled. The latter, on their part, appealed on the ground that the allowances were insufficient.

One of the grounds on which we held that the debtor's petition for reorganization should be dismissed was that it was an insurance company and was thereby excepted by § 4 from the benefits of the Act, 11 U.S.C.A. § 22. The Supreme Court found it unnecessary to consider or determine this question and affirmed the decision of this court on other grounds. The point is again raised on this appeal and the discussion of the parties has proceeded upon the assumption that the debtor was an insurance company and that the federal court was therefore without jurisdiction to entertain the petition for reorganization.

At the outset, it is desirable to review the circumstances under which the debtor's petition for reorganization was filed. We found in the earlier decision that it was not filed in good faith in the sense in which that term is used in § 146 of the statute, 11 U.S.C.A. § 546, because the interests of creditors and stockholders would be best subserved in the prior state court proceeding in which receivers had already been appointed. Nevertheless, the petition was filed with the authority of the directors of the corporation and it is clear that it was filed in good faith in the common acceptation of that term. The determination of the question whether the corporation was an investment company issuing annuity contracts, or an insurance company, presented legal and factual questions of some difficulty. Furthermore, the question was raised as to whether a reorganization under Chapter X comprehended an orderly liquidation of its assets; for although it speedily became apparent that reorganization of the company as a going concern was out of the question, it was contended, with some support in the decisions in other circuits, that a slow and orderly liquidation of corporate assets in a way beneficial to the creditors might properly be considered a reorganization under Chapter X of the statute. It was not until the decision of the Supreme Court in this case that this notion was finally dissipated. The grant of the writ of certiorari by that court indicates the difficulty and the novelty of the questions involved.

The primary question on these appeals is whether in the absence of jurisdiction the court had power to allow compensation for services rendered during the period of nearly two years while the debtor's petition was before it. The nature of the question may be illustrated by the decision of the Supreme Court in Lion Bonding Co. v. Karatz, 262 U.S. 77, 43 S.Ct. 480, 67 L.Ed. 871; Id., 262 U.S. 640, 43 S.Ct. 641, 67 L.Ed. 1151, upon which the receivers chiefly rely. In that case the lower federal court assumed jurisdiction and appointed a receiver for an insolvent corporation in an equity proceeding on the petition of a creditor possessed of a claim of $2,100 who alleged that the suit was brought also on behalf of other creditors similarly situated. The Supreme Court reversed, holding that the facts specifically stated in the bill showed that the amount in controversy was less than $3,000, since the claims of other creditors, each less than $3,000, could not be aggregated to confer jurisdiction. Before the mandate of the Supreme Court issued, the receivers applied for modification of the decree and asked approval of the disbursement for expenses of the receivership paid by them out of the corporation's assets and approval of charges made by attorneys for services rendered during the two years of the receivership. The court denied the motion, saying (262 U.S. 641, 642, 643, 43 S.Ct. 642, 67 L.Ed. 1151): "This court is without power to grant any part of the relief sought. The District Court was without jurisdiction as a federal court to appoint receivers in, or otherwise to entertain, the Karatz suit. * * * As the lower federal courts lacked jurisdiction, they are neces-

sarily without power to make any charge upon, or disposition of the assets within their respective districts. Even where the court which appoints a receiver had jurisdiction at the time, but loses it, as upon supervening bankruptcy, the first court cannot thereafter make an allowance for his expenses and compensation. He must apply to the bankruptcy court. Where a case is dismissed for want of jurisdiction as a federal court, there is not even power to award costs against the defeated party. * * * The only course open to the creditors, as to the receivers and their counsel, is to apply to the state court."

This decision, as the cases cited therein show, did not introduce a new limitation on the power of the federal courts, although the limitation was somewhat extended [1] by the statement that where the federal court dismisses a case for lack of jurisdiction, it has not even the power to award costs against the defeated party. Similar conclusions to that of Lion Bonding Co. v. Karatz were reached in the equity receivership in Finneran v. Burton, 8 Cir., 291 F. 37, decided about the same time, and in the cases therein cited. The court held that a receiver appointed by a state court without jurisdiction could not be allowed compensation by the bankruptcy court by which the debtor was subsequently adjudged a bankrupt, although the receivers' services were of benefit to the estate. Lion Bonding Co. v. Karatz has been cited with approval in many cases on the point under discussion as well as other points. See Burnrite Coal Co. v. Riggs, 274 U.S. 208, 211, 47 S.Ct. 578, 71 L.Ed. 1002; Gross v. Irving Trust Co., 289 U.S. 342, 345, 53 S.Ct. 605, 77 L.Ed. 1243, 90 A.L.R. 1215; First National Bank v. Flershem, 290 U.S. 505, 510. In Gross v. Irving Trust Co., 289 U.S. 342, at page 345, 53 S.Ct. 605, at page 607, 77 L.Ed. 1243, 90 A.L.R. 1215, the court in laying down the rule that a state court is deprived of power to fix the compensation of its receiver when bankruptcy supervenes, said: "We adopt, as stating the correct rule, the language used in Lion Bonding Co. v. Karatz, 262 U.S. 640, 642, 43 S.Ct. 641, 642, 67 L.Ed. 1151, although it was not strictly necessary to that decision: 'Even where the court which appoints a receiver had jurisdiction at the time, but loses it, as upon supervening bankruptcy, the first court cannot there-

after make an allowance for his expenses and compensation. He must apply to the bankruptcy court.' See authorities cited in the footnote following this statement."

The rule of Lion Bonding Co. v. Karatz was also strictly applied in Noxon Chemical Co. v. Lackie, 3 Cir., 39 F.2d 318, where it was held that a court which had appointed a receiver for the property of a corporation without jurisdiction to do so was powerless, when its action was set aside on appeal, to allow compensation out of the corporate assets for the services of the receiver or the master or the attorneys. Cf. Close v. Brictson Mfg. Co., 8 Cir., 49 F.2d 751; W. F. Potts Son & Co. v. Cochrane, 5 Cir., 59 F.2d 375.

On the other hand, it was held in In re 4136 Wilcox Bldg. Corp., 7 Cir., 100 F.2d 588, upon the dismissal of a reorganization proceeding in bankruptcy under Section 77B of the old Act, 11 U.S.C.A. § 207, for lack of jurisdiction on the ground that the corporate debtor had ceased to exist under the state law, that the court had power to direct payment out of the funds of the estate for expenses incurred in handling the debtor's property and the fees of attorneys for services rendered during the course of the litigation. The decision was based upon the established rule that when the jurisdiction of a court of bankruptcy is challenged on the ground that the debtor belongs to a class excepted from the operation of the statute, the court has jurisdiction at least to decide the controversy, Denver First National Co. v. Klug, 186 U.S. 202, 22 S.Ct. 899, 46 L.Ed. 1127; and therefore the court has the power to make allowances for expenses incurred and services rendered to the estate during the pendency of the controversy.

We think this course should be followed in the bankruptcy court, especially in reorganization proceedings under Chapter X where Congress has shown an intention to encourage the institution of rehabilitation proceedings for the reconstruction of failing businesses. Controversies will inevitably arise with regard to the application of the Act to particular debtors, and while these controversies are in the process of solution by the courts protracted periods of time will elapse during which the assets of the estate must be preserved and cared for under the supervision of the

[1] This is pointed out and supported by citations in Finletter, The Law of Bankruptcy Reorganization, p. 689, note 20; p. 690, note 24.

court and its officers. It seems reasonable to conclude that the power to care for the assets in the meantime and to make payment of the expenses involved is incidental to the admitted jurisdiction to decide the questions in dispute. Otherwise the free approach to the court by those who in good faith seek the rehabilitation of a debtor will be impeded by the fear that they will be required to pay the expenses of the proceeding if the court ultimately concludes upon disputed facts that it lacks the jurisdiction to carry on.

■ That Congress intended to broaden the scope of corporate reorganization in the federal court and to encourage the institution of proceedings under Chapter X is shown by divers statutory provisions. A petition for reorganization may be filed notwithstanding the pendency of any prior mortgage foreclosure, equity or other proceeding in a state or federal court, § 256, 11 U.S.C.A. § 656. The creditors and their attorneys and the trustee and his attorney are encouraged to participate in the proceedings by the provision that the judge may allow reimbursement for their reasonable costs and expenses, § 241, 11 U.S.C.A. § 641; and even though the proceeding is dismissed the judge may allow reasonable compensation for services rendered and costs incurred while the proceeding is pending, §§ 246 and 259, 11 U.S.C.A. §§ 646 and 659. The last mentioned sections, of which § 259 is especially pertinent in the pending case, are as follows:

"§ 246. Upon the dismissal of a proceeding under this chapter, or the entry of an order adjudging the debtor a bankrupt, the judge may allow reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred in such proceeding prior to such dismissal or order of adjudication by any persons entitled thereto, as provided in this chapter, and shall make provision for the payment thereof, and for the payment of all proper costs and expenses incurred by officers in such proceedings."

"§ 259. Upon a dismissal of a proceeding under this chapter, such prior proceeding shall become reinstated, and the judge shall allow the reasonable costs and expenses under this chapter, including the allowances provided for in article XIII of this chapter, and shall make appropriate provision for the retransfer of such property to the person or persons entitled thereto under such terms as may be equitable for the protection of the obligations incurred in the proceedings under this chapter by the trustee or debtor in possession, and for the payment of the costs and expenses of the proceedings."

It is true that there was a real need for the passage of the last mentioned sections even in cases clearly within the jurisdiction of the court, for it had been held by most courts under § 77 B, sub. c (9) of the old statute 11 U.S.C.A. § 207, sub. c, that the courts were authorized to allow fees only for such services as may have contributed to a plan, and not for services in opposition thereto or for services in support of an unsuccessful plan. See the cases cited in In re 4136 Wilcox Bldg. Corp., supra. Nevertheless there is nothing in the language of §§ 246 and 259 to limit their application to cases of undisputed jurisdiction, and the spirit and purpose of the Act will be served if the provisions of these sections are construed to confer the power to allow reasonable compensation even in cases where the proceeding is dismissed for jurisdictional reasons.

■ It should be noted that we are not dealing in the present case with a basic jurisdictional defect, such as lack of jurisdiction over the person or the general subject matter which may be raised at any time in any court or in any subsequent proceeding. The defect under consideration is one that has been defined as semijurisdictional and subject only to semicollateral attack, that is, an attack which may be made even after the time for appeal has expired or for the first time in an appellate court; but when finally determined between the parties to the litigation cannot be raised again in another case. See Finletter, The Law of Bankruptcy Reorganization, Ch. 9, pp. 620 et seq.[2]

---

[2] The author reluctantly applies the rule of Lion Bonding & Surety Co. v. Karatz, supra, to proceedings under Chapter X when lack of jurisdiction appears, but urges that the application of the rule should be restricted as far as possible. He says (pp. 692-693): "In proceedings under Chapter X or Section 77 a creditor's petition may be dismissed because of ineligibility of the debtor, lack of capacity of the creditors, lack of proof of insolvency, lack of proof of feasibility, lack of good faith or lack of proof that one of the contingencies listed in Section 131 has happened. The tendency should be to hold as few of

. We think, therefore, that the District Judge had power to direct the payment of compensation for services rendered during the pendency of the case in his court. However, it is obvious that the failure of the reorganization and the dismissal of the proceedings are facts which should be considered in fixing the amount of the compensation, for the outlay must be made at the expense of the creditors who will have received no benefit from the efforts put forth, no matter how well intentioned they may have been. In our view insufficient weight has been given to these considerations in the present case; and there is another weighty circumstance which leads us to the conclusion that the allowances to the trustee and its attorneys should be reduced.

The Central Trust Company, the debtor's trustee, had a capital of $500,000 and a surplus of $256,000; its annual operating expense was approximately $35,000, which included $17,280 for salaries paid its executive officers who handled the debtor's affairs. In its capacity of trustee the Trust Company acted upon the assumption that it had complete responsibility for the securities of the aggregate value at the beginning of the proceeding of approximately twenty million dollars on deposit with officials of the several states to secure the performance of the debtor's contracts therein, whereas the Trust Company had the actual custody and control of only the approximate sum of one million dollars which had been turned over to it by the West Virginia receivers in accordance with certain orders issued by the District Court. As pointed out ·in the earlier opinion, 129 F.2d 442, 444, 447, the District Court by ex parte order originally directed the state receivers and all officials of West Virginia and of other states, who held the debtor's deposits, to turn over all the property in their hands to the trustee of the District Court; but these orders were disregarded and were subsequently modified by the elimination of the turnover provision and the state officials were merely enjoined from selling or otherwise disposing of any of the assets of the debtor in their possession. This restriction was further modified on July 22, 1942, after the prior decision of this court by allowing the state officials to make sale of securities in their hands and to reinvest the proceeds.

Notwithstanding this situation, the trustee, with the consent of the court, employed investment counselors at the rate of $750 per month to advise them as to the handling of the entire portfolio of the debtor and forwarded the recommendations received to the several state officials who, for the most part disregarded them. The trustee has taken the position throughout that its compensation should be fixed upon the basis of an estate of twenty-three million dollars.[3] We do not think that this position is tenable. From the beginning the validity of the court's orders, as well as its jurisdiction, were under attack; by far the larger part of the securities were in the hands of state officials experienced in the handling of securities, and these officials actually assumed the responsibility for the funds of the debtor in their custody. To compensate the trustee upon the theory that the whole fund was committed to its charge is to disregard the actual facts.

It should also be borne in mind, as pointed out in the opinions of this court and of the Supreme Court, that early in the proceeding it became clear that a reorganization of the debtor was impossible and that nothing could be expected from the pro-

---

these matters to be 'jurisdictional' as is consistent with stare decisis; for, if they are jurisdictional there is no power in the court to assess costs against either party, while if they are not, the costs may be assessed according to the equities of the case. It is unquestionable that if a court lacks jurisdiction over the subject matter or the person, so that it cannot render a valid judgment in the cause, it should not have the power to assess costs against the successful party. Possibly also the unsuccessful party should be immune. It is however difficult to understand why, in a case in which the court has sufficient jurisdiction to render a judgment which may not · be attacked collaterally in any other proceeding (as it may do in all cases except where it lacks jurisdiction over the person or the subject matter), it lacks the power to assess costs against the parties. None of the reasons listed above for dismissing the petition should therefore be held to be 'jurisdictional' except possibly ineligibility of the debtor, lack of proof of insolvency, and because of Lion Bonding & Surety Co. v. Karatz, lack of capacity of the petitioning creditors."

[3] The value of the debtor's estate increased during the pendency of the proceeding by reason of the rise in the market price of the securities.

ceeding save an orderly and deliberate liquidation of the assets for the benefit of the creditors. While from time to time the possibility of the formulation of a plan was discussed, no written plan was actually presented either by the trustee or any of the other parties in the case. In fact the activities of the trustee were in large part devoted to participation in the attempt to retain control of the assets of the debtor under the direction of the federal court, to the care and custody of cash and securities in the approximate sum of one million dollars, and to the management of the business at the home office of the debtor in Wheeling, West Virginia, under the direction of one of the West Virginia receivers and the former employees of the debtor who were employed by the trustee for the purpose and were compensated from the debtor's funds. The sum of $264,075.31 was allowed the trustee for expenses incurred during its tenure of office.

■ An examination of the evidence leads to the conclusion that an ample allowance to the trustee for its services during the two year period would be $25,000 upon which the interim payment of $18,000 should be credited. This allowance is to cover all services of the trustee from the beginning up to and including the final accounting in the District Court and the turnover of the balance in hand to the state court receivers. Similarly the sum of $20,000 is a sufficient allowance for the services of the attorneys for the trustee upon which the interim payment of $12,000 should be credited, and as in the case of the trustee this allowance is to cover all services of the attorneys to the final conclusion of the case, including such as they may have rendered in the litigation that culminated in the dismissal of the proceeding.

■ It is objected by the appellants that the trustee had no concern with disputed questions relating to the retention of the case in the federal court and hence that its attorneys should have rendered no services in this litigation and should not be compensated therefor. It was held in Loomis v. Gila County, 9 Cir., 101 F.2d 827; Id., 103 F.2d 312, that a trustee had no such interest in a proceeding taken under Section 77 B, 11 U.S.C.A. § 207, as to entitle him to appeal from the dismissal of the proceeding; but the court restricted its holding to a proceeding under that section and especially refrained from stating an opinion as to the propriety of such action by the trustee under the Chandler Act. By that Act important duties were imposed upon the trustee with respect to assisting the judge by making investigations and securing information with regard to the debtor's plans, proposing and reporting on plans of reorganization and soliciting acceptances of the plan. See §§ 167, 169, 175, 11 U.S.C.A. §§ 567, 569, 575. We think that it is within the discretion of the court under the Chandler Act to authorize the trustee to participate in any efforts that may be necessary to safeguard the trustee's status and to retain the proceeding in the federal court and for this purpose to secure the services of attorneys. The participation of the attorneys of the trustee in the prior litigation in this case was taken with the authority of the District Judge and compensation therefor was properly allowed.

■ The allowances for services rendered by attorneys for the debtor in the aggregate sum of $38,500, including $12,500 for an appeal to the Supreme Court, must also be reduced to the sum of $25,000 to be distributed amongst the attorneys as the District Judge in his discretion shall direct. This allowance also is to cover all services of these attorneys up to and including the final conclusion of the case in the District Court.

### Case No. 5184.

The appeal in this case is taken from an order of September 20, 1943, whereby the trustee's report of receipts and disbursements from its last prior account to the date of the order was approved. The receivers objected to the order primarily on two grounds: (1) That the District Court did not have the power after entering its dismissal order of May 20, 1943, pursuant to the mandate of the Supreme Court to retain control of any part of the funds of the debtor for the purpose of closing out the estate and discharging the trustee, but, on the contrary, should have directed the trustee to turn over all of the funds in its hands to the receivers appointed by the state court, and should have directed the trustee to submit its final accounting to that court for its approval; and (2) that certain of the expenditures of the trustee were improper and of no benefit to the estate.

■ In connection with the first ground reference is made to § 237 of Chapter X, 11 U.S.C.A. § 637, which provides that upon the dismissal of a proceeding filed in

a case wherein no bankruptcy proceeding was pending, the judge shall enter a final decree discharging the trustee and closing the estate, except as provided in § 259, 11 U.S.C.A. § 659, quoted in the foregoing opinion. On May 22, 1943, after fixing the allowances to the trustee and to the attorneys which we have already considered, the court passed a dismissal order whereby the petition of the debtor was dismissed and the trustee was directed to turn back to the receivers appointed by the West Virginia court all or the assets and property of the debtor in its possession, except certain property received from the receiver of the state court of Ohio, which was to be disposed of in accordance with the direction of that court, and except the sum of $10,000 for paying the proper expenses of closing out the estate in the federal court. The trustee was also ordered to retain sufficient funds of the debtor to cover the amount of compensation and expenses asked for by the trustee and the several attorneys, since these persons had taken an appeal to this court from the refusal of the District Judge to allow the full sums prayed for. The purpose of the court was obviously to place in the hands of the state court receivers as soon as possible all of the debtor's funds except so much as would be necessary to pay such fees as might finally be allowed and to pay the final expenses of closing out the estate. We see nothing in this procedure that was inconsistent with §§ 237 and 259 of Chapter X which provide, upon dismissal, that the judge shall allow the reasonable costs and expenses of the proceedings and make appropriate provision for a retransfer of the property to the persons entitled thereto "upon such terms as may be equitable for the protection of the obligations incurred in the proceedings under this chapter by the trustee or debtor in possession, and for the payment of the costs and expenses of the proceedings."

█ The discussion in the foregoing opinion with respect to the allowance of compensation to the trustee and to the attorneys is a sufficient answer to the present contention that the federal court did not have power to approve the accounts of the trustee but should have directed the trustee to submit them to the state court. The power of the federal court to decide whether it had jurisdiction over the debtor involved the incidental power to preserve the estate while the disputed question was in litigation. The same considerations answer the objections to the allowance of the expenses incurred during the period consumed by the prosecution of the appeal to the Supreme Court and the period subsequent to its decision during which the District Court heard and determined the applications of the trustee and the attorneys for compensation.

█ These expenses, to which special objection was made, were covered by periodic reports filed in the proceeding and approved by the Judge after due notice without objection or protest on the part of the state court receivers; and we think that under these circumstances the trustee was justified in making the expenditures and should not now be required to account for the same out of its own funds.

The orders appealed from in these cases should be modified, and they will be remanded to the District Court for further proceedings in accordance with these opinions.

Nos. 5112 and 5164 modified and remanded for further proceedings.

Nos. 5184 and 5189 affirmed.