**FEDERATED INDEPENDENT TEXAS UNIONS, LOCAL AIRCRAFT NO. 900, et al. v. INTERNATIONAL ASS'N OF MACHINISTS, LOCAL LODGE NO. 776 A. & B., et al.**

Civ. A. Nos. 1453, 1458.

District Court, N. D. Texas, Fort Worth Division.

Aug. 7, 1948.

Clark, Craik, Burns & Weddell, of Fort Worth, Tex., for plaintiffs.

McCraw, Campbell & Shaw of Dallas, Tex., for defendants Fort Worth Aircraft Locals 776 A and B, John F. Foster, Jr. and William Sodd.

Buck & Harris, of Fort Worth, Tex., for defendant Consolidated Vultee Aircraft Corporation.

Daffan & Proctor, of Houston, Tex., for defendant International Ass'n of Machinists.

DOOLEY, District Judge.

The above cause was filed in the State court, but upon separate petitions of two defendants the suit was removed, and du-

plicate copies of the removal record have been filed in this Court. The Court is confronted at the outset with a query as to the jurisdictional sufficiency of the amount in controversy.

The plaintiffs, Federated Independent Texas Unions, Local Aircraft No. 900, and seven employees, members of the said Unions, for themselves and ostensibly others of like interest, sued the defendants, International Association of Machinists, Local Lodge No. 776 A. & B., two individuals and the employer corporation, Consolidated Vultee Aircraft Corporation.

The plaintiffs' complaint, in explanatory background, alleged, so far as presently material, that the defendant Unions had been the bargaining representative under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., for the seven plaintiff employees and several thousand other employees of the employer corporation, and as such negotiated a contract with the employer corporation covering, inter alia, the wages of said employees, but that same expired January 31, 1946, and from that date until May 23, 1946, no formal contract existed between the employer corporation and the employees in said unit, although for some time before said expiration date negotiations had been in progress, without avail, for a new contract; that on or about February 4, 1946, during the contract hiatus, the employer corporation voluntarily offered to pay its said employees a general increase of 15 per cent in wages, effective that date; that on or about February 23, 1946 the defendants, other than the employer corporation, called for a general strike at the plant of the employer corporation, but none of the plaintiff employees, nor any except a small percentage of all the employees, went out on said strike which proved to be a failure; that a strike settlement contract was finally signed between the employer corporation and the defendant Unions on or about May 23, 1946; that in the meantime the plaintiff employees and many like employees had remained at work for the employer corporation; that the employer corporation wanted to pay the plaintiff employees and other similar employees the increase in wages for the time of the interval between the announcement of such increase and the date of said settlement contract, but in the parleys before said strike settlement contract the defendant Unions, unmindful of their duty and in breach of trust and fidelity, stood against any such payment to the plaintiff employees, or other similar employees, being bent on sacrificing the rights and interests of the said employees, in a spirit of spite and reprisal, and, by threats and pressure against the employer corporation, kept such provision out of the contract.

The theory of the suit, between the plaintiffs and the employer corporation, is simply an action, under an express or implied contract, presumably unwritten, to recover an alleged debt in the amount of said increase in wage rates, said to exceed $200,-000.00, accrued collectively to the plaintiff employees as well as the several thousand similar employees not parties to the suit, for work and labor done between February 4, 1946 and May 23, 1946, and, between the plaintiffs and the defendant Unions the suit is to recover judgment against the Unions, jointly with the employer corporation, for said wage debt, and also exemplary damages against the defendant Unions.

Any jurisdiction herein is contingent on diversity of citizenship and the requisite amount of more than $3,000.00 in controversy. The present inquiry pretermits any questions posed by the diversity angle, and will turn at once to the size of the amount in controversy. The seven employee plaintiffs not only sue for themselves, but also undertake to sue for the benefit of all other employees similarly situated, and the amount of the wage claim is alleged to exceed $200,000.00. Of course this allegation does not mean that the plaintiff employees alone are entitled to recover any such large sum, but instead simply states an aggregate amount claimed in behalf of all the large body of employees collectively. Even this procedural bid for a collective remedy is not built on any previous collective activities material to the alleged cause of action herein. The wage claim does not grow out of any collectively bargained contract, but on the contrary originated in an alleged increase in wage rates tendered by the employer voluntarily.

The plaintiffs do not so much as allege any concerted or formal acceptance of the wage increase. Naturally, being beneficial, it doubtless is true that the non-striking employees in remaining at work, meant to accept the raise in wages, but still the legal effect was an implied contract between the employer and each employee respectively. Each employee worked in his own separate interest, and no one had any joint or undivided right in the aggregate wages of all the group of employees. It could hardly be otherwise, what with labor turnover and other elements of the personal equation, making man by man payment of wages, rather than any collective method of payment indiscriminately, the only real workable practice. The employees even could have bargained collectively, and still earned singly. This alleged cause of action plainly reflects severalty rather than totality in its nature. Although the suit has the cast of a class action, it is not a true or representative class suit. It is not founded on any joint or undivided claim, title or fund, common to all members of the class. In other words, it is a spurious class suit, and simply instances a permissible type of joinder. Such privilege of joinder, however, is immaterial in defining the amount in controversy for the purposes of federal jurisdiction. Sturgeon v. Great Lakes Steel Corporation, 6 Cir., 143 F.2d 819; Central Mexico Light & Power Co. v. Munch, 2 Cir., 116 F.2d 85; Shipley v. Pittsburgh & L. E. R. Co., D.C., 70 F.Supp. 870; Long v. Dravo Corporation, DC., 6 F.R.D. 226; Cyclopedia of Federal Procedure, 2d Ed., Vol. 6, Sec. 2307.

 The fact that claimants may have a community of interest, or rely upon a common issue of fact or principle of law to support their similar claims, is not enough to pyramid the amount in controversy governing federal jurisdiction. Hence the composite wages alleged to be due all of the employees in question cannot be aggregated in testing the jurisdiction of this Court. The Court is without jurisdiction in this suit unless some one or more of the plaintiff employees has or have sued in his or their own right separately for more than $3,000.00, but the plaintiffs tacitly concede that none of them respectively claims such amount of unpaid wages, and the same may

be assumed with good assurance as to the un-named members of the whole employee group respectively. This Court is bound to notice and act on the said defect of jurisdiction herein. Thomson v. Gaskill, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951; Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 43 S.Ct. 480, 67 L.Ed. 871; Sturgeon v. Great Lakes Steel Corporation, supra; Woerter v. Orr, 10 Cir., 127 F.2d 969; Frank & Lambert, Inc., v. Rosengren, 8 Cir., 97 F.2d 460; Shipley v. Pittsburgh & L. E. R. Co., supra; Robertson v. Argus Hosiery Mills, Inc., D.C., 32 F.Supp. 19; Terrio v. S. N. Nielsen Const Co, D.C., 30 F.Supp. 77; Long v. Dravo Corp., supra.

A reference will be made to cases cited by plaintiffs in undertaking to defend the jurisdiction herein. In Local Union No. 497 of Amalgamated Ass'n of Street & Electric Ry. Employees of America v. Joplin & P. Ry. Co., 10 Cir., 287 F. 473, the Union, as express statutory agent, sued for its members to recover under an alleged award for a gross sum of unpaid wages made by the Court of Industrial Relations, of Kansas. The next case is Shields v. Thomas, 17 How. 3, 58 U.S. 3, 15 L.Ed. 93, which was a suit by the plaintiffs below on a money judgment they had recovered in their joint right and capacity as heirs and legal representatives of a certain intestate. The other case is Grand Rapids Furniture Co. v. Grand Rapids Furniture Co., 7 Cir., 127 F.2d 245, where certain manufacturers, and their trade association, brought suit to restrain alleged unfair trade practices detrimental to the common interest of the plaintiffs in the public confidence and good will going with the name of Grand Rapids, Michigan, as a reputable center of the furniture industry. Certainly suits in the nature of a special statutory action, or on demands evidenced by a joint award or judgment, or suits for injunctive relief against wrongful conduct resulting in an essentially common injury, are distinguishable from a suit like the present brought to enforce such naturally single claims as unliquidated wage demands of individual workmen.

An order, sua sponte, will be entered remanding this case to the State court.